1   Scott S. Thomas, NV Bar No. 7937
    sst@paynefears.com
2   Sarah J. Odia, NV Bar No. 11053
    sjo@paynefears.com
3   PAYNE & FEARS LLP
    6385 S. Rainbow Blvd., Suite 220
4   Las Vegas, Nevada 89118
    Telephone: (702) 851-0300
5   Facsimile: (702) 851-0315

6   Attorneys for CENTEX HOMES, CENTEX REAL
    ESTATE CONSTRUCTION COMPANY, PULTE
7   HOME CORPORATION, AND PULTE
    DEVELOPMENT CORPORATION

8

9                  **UNITED STATES DISTRICT COURT**

10                         **DISTRICT OF NEVADA**

11
    CENTEX HOMES, a Nevada general          Case No.:
12  partnership; CENTEX REAL ESTATE
    CONSTRUCTION COMPANY, a Nevada          **PLAINTIFFS' COMPLAINT FOR:**
13  corporation; PULTE HOME
    CORPORATION, a Michigan corporation;    **(1) BREACH OF CONTRACT;**
14  PULTE DEVELOPMENT CORPORATION,
    a Michigan corporation                  **(2) BREACH OF THE IMPLIED**
15                                          **COVENANT OF GOOD FAITH AND**
                                            **FAIR DEALING;**
16              Plaintiffs,
                                            **(3) VIOLATIONS OF NEVADA'S**
17       v.                                 **UNFAIR CLAIMS SETTLEMENT**
                                            **PRACTICES ACT, NEV. REV. STAT.**
18  NGM INSURANCE COMPANY, a Florida        **ANN. § 686A.310;**
    corporation,
19                                          **(4) DECLARATORY RELIEF—DUTY TO**
                                            **DEFEND.**
20              Defendant.
                                            **JURY DEMAND**
21

22

23       Plaintiffs Centex Homes, Centex Real Estate Construction Company, Pulte Home

24  Corporation, and Pulte Development Corporation (collectively, "Plaintiffs") hereby allege as

25  follows:

26                              **PARTIES**

27       1.      At all times mentioned herein, Centex Homes was and is a Nevada general

28  partnership with its principal place of business in Atlanta, Georgia.  The partners of Centex Homes

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

include (a) Centex Real Estate Corporation, (b) Nomas LLC, and (c) Centex International II, LLC. Centex Homes is, and at all times mentioned herein was, authorized to do business in the State of Nevada.

2.      At all times mentioned herein, Nomas LLC was and is a Nevada limited liability company with its principal place of business in Atlanta, Georgia.  The sole member of Nomas LLC is Centex International II, LLC.

3.      At all times mentioned herein, Centex International II, LLC, was and is a Nevada limited liability company with its principal place of business in Atlanta, Georgia.  The sole member of Centex International II, LLC is Centex LLC, which is also a Nevada limited liability company with its principal place of business in Atlanta, Georgia.

4.      At all times mentioned herein, the sole member of Centex LLC is Centex Home Corporation, which is a Michigan Corporation with its principal place of business in Atlanta, Georgia.

5.      At all times mentioned herein, Centex Real Estate Corporation ("Centex RE Corp.") was and is a Nevada corporation with its principal place of business in Atlanta, Georgia.

6.      At all times mentioned herein, Centex Real Estate Construction Company was and is a Nevada corporation with its principal place of business in Atlanta, Georgia.

7.      At all times mentioned herein, Pulte Home Corporation was and is a Michigan corporation with its principal place of business in Atlanta, Georgia.

8.      At all times mentioned herein, Pulte Development Corporation was and is a Michigan corporation with its principal place of business in Atlanta, Georgia.

9.      Plaintiffs are informed and believe, and on that basis allege, that Defendant NGM Insurance Company ("NGM") at all times mentioned herein was and is a Florida corporation with its principal place of business in Jacksonville, Florida.  Upon information and belief, NGM is and was at all times mentioned herein eligible to do business as an insurer in the State of Nevada and in the State of Arizona. Plaintiffs are informed that NGM has substantial and continuous contacts with the State of Nevada, including but not limited to, being licensed as a Nevada insurer continuously since 2004, issuing insurance policies to Nevada residents, and appointing Nevada-

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

based insurance agencies to issue policies for NGM in Nevada, giving Nevada courts general jurisdiction over NGM.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action founded on diversity of citizenship pursuant 28 U.S.C. § 1332, because the matters in controversy exceed $75,000.00, exclusive of interest and costs, and because complete diversity exists between Plaintiffs and Defendant.

11.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because this court has personal jurisdiction over the defendant as described in paragraph 9.

## GENERAL ALLEGATIONS

12.     Plaintiffs are homebuilders that participated in the construction of residential developments in Nevada and Arizona; this dispute relates to seventeen of those developments (the "Developments").

13.     Plaintiffs performed no work at the Developments; instead, subcontractors performed all of the work.

14.     Homeowners in each of the Developments asserted multiple construction defect claims and lawsuits against Plaintiffs.

15.     Plaintiffs tendered each of the claims and lawsuits to NGM under one or more commercial general liability insurance policies issued to one or more subcontractors who performed work for Plaintiffs on the Developments.

16.     For each of the sixteen claims, NGM acknowledged that it has a duty to defend one or more of the Plaintiffs as additional insureds under one or policies issued by NGM to Plaintiffs' subcontractors.

17.     Since acknowledging its duty to defend Plaintiffs, NGM has paid nothing toward the Plaintiffs' defense in thirteen of the sixteen claims; and, in two of the claims has paid only a nominal amount toward Plaintiffs' defense.

**The Subcontractors**

18.     Stucco Systems, LLC ("Stucco Systems") subcontracted with one or more of the

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

Plaintiffs to, among other things, supply and install stucco systems in twelve of the sixteen Developments.

19.     West Coast Air Conditioning, LLC dba Red Rock Mechanical ("West Coast AC") subcontracted with one or more of the Plaintiffs to, among other things, supply and install heating, ventilation, and air conditioning systems in two of the sixteen Developments.

20.     Sun Tan Drywall subcontracted with one or more of the Plaintiffs, to, among other things, supply and install drywall in one of the sixteen Developments.

21.     Cobra Plastering, Inc. ("Cobra Plastering") subcontracted with one or more of the Plaintiffs, to among other things, supply and install stucco systems in five of the sixteen Developments.

22.     Anozira Stucco & Stone ("Anozira") subcontracted with one or more of the Plaintiffs, to among things, supply and install stucco systems in two of the sixteen Developments.

23.     Whittion Companies ("Whittion") subcontracted with one or more of the Plaintiffs, to among other things, supply and install rough carpentry/framing in one of the sixteen Developments.

**The Stucco Systems Policies**

24.     Stucco Systems performed work at twelve of the sixteen Developments pursuant to written subcontracts that it entered into with one or more of the Plaintiffs.

25.     Each subcontract required Stucco Systems to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name one or more of the Plaintiffs, their respective officers, directors, partners, members and employees, as additional insureds under those insurance policies.

26.     Stucco Systems obtained the following commercial general liability policies from NGM ("the Stucco Systems policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| NGM | MPG2143B | 2/1/10 – 2/1/15 | Stucco Systems | Pulte Home Corp.; Pulte Development Corp.; Centex Real Estate Construction Co. |

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

27.     The Stucco Systems policies were endorsed to cover the Additional Insured Plaintiffs listed above as an "additional insured" with respect to liability arising out of Stucco Systems' work.

28.     The coverage afforded under the Stucco Systems policies require NGM to defend the Additional Insured Plaintiffs listed above against all claims that create potential liability for covered property damage or bodily injury.

**The West Coast AC Policies**

29.     West Coast AC performed work at three of the sixteen Developments pursuant to one or more written subcontracts that it entered into with one or more of the Plaintiffs.

30.     Each subcontract required West Coast AC to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name one or more of the Plaintiffs, their respective officers, directors, partners, members and employees, as additional insureds under those insurance policies.

31.     West Coast AC obtained the following commercial general liability policies from NGM ("the West Coast AC policies"):

| Insurer | Policy No. | Policy Period | Named Insured | Additional Insured |
|---------|-----------|---------------|---------------|--------------------|
| NGM | MPG3722A | 3/24/09 – 3/24/10 | West Coast AC | Centex Homes; Centex Real Estate Construction Co. |

32.     The West Coast AC policies were endorsed to cover the Additional Insured Plaintiffs listed above as an "additional insured" with respect to liability arising out of the work of West Coast AC.

33.     The coverage afforded under the West Coast AC policies require NGM to defend the Additional Insured Plaintiffs listed above against all claims that create potential liability for covered property damage or bodily injury.

**The Cobra Plastering Policies**

34.     Cobra Plastering performed work at five of the sixteen Developments pursuant to one or more written subcontracts that it entered into with one or more of the Plaintiffs.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

35.     Each subcontract required Cobra Plastering to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name one or more of the Plaintiffs, their respective officers, directors, partners, members and employees, as additional insureds under those insurance policies.

36.     Cobra Plastering obtained the following commercial general liability policies from NGM ("the Cobra Plastering policies"):

| Insurer | Policy Number | Policy Period | Named Insured | Additional Insured |
|---------|---------------|---------------|---------------|--------------------|
| NGM | MPG1882B | 12/15/09 – 6/7/10 | Cobra Plastering | Pulte Development Corp.; Pulte Home Corp.; |

37.     The Cobra Plastering policies were endorsed to cover the Additional Insured Plaintiffs listed above as an "additional insured" with respect to liability arising out of Cobra Plastering's work.

38.     The coverage afforded under the Cobra Plastering policies requires NGM to defend the Additional Insured Plaintiffs listed above against all claims that create potential liability for covered property damage or bodily injury.

**The Anozira Policies**

39.     Anozira performed work at one of the sixteen Developments pursuant to one or more written subcontracts that it entered into with one or more of the Plaintiffs.

40.     Each subcontract required Anozira to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name one or more of the Plaintiffs, their respective officers, directors, partners, members and employees, as additional insureds under those insurance policies.

41.     Anozira obtained the following commercial general liability policies from NGM ("the Anozira policies"):

| Insurer | Policy No. | Policy Period | Additional Insured |
|---------|-----------|---------------|--------------------|
| NGM | MPG17259 | 5/25/11 – 5/25/14 | Pulte Development Corp., Centex Real Estate Construction Co., and Pulte Home Corp. |

PAYNE & FEARS LLP

ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

42.     The Anozira policies were endorsed to cover the Additional Insured Plaintiffs identified above as "additional insureds" with respect to liability arising out of Anozira's work.

43.     The coverage afforded under the Anozira policies requires NGM to defend the Additional Insured Plaintiffs identified above against all claims that create potential liability for covered property damage or bodily injury.

**The Whittion Policies**

44.     Whittion performed work at one of the sixteen Developments pursuant to one or more written subcontracts that it entered into with one or more of the Plaintiffs.

45.     Each subcontract required Whittion to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence, $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to name one or more of the Plaintiffs, their respective officers, directors, partners, members and employees, as additional insureds under those insurance policies.

46.     Whittion obtained the following commercial general liability policies from NGM ("the Whittion policies"):

| Insurer | Policy No. | Policy Period | Additional Insured |
|---------|-----------|---------------|--------------------|
| NGM | MPT0573E | 3/30/12 – 3/30/13 | Pulte Development Corp., Centex Real Estate Construction Co., and Pulte Home Corp. |

47.     The Whittion policies were endorsed to cover the Additional Insured Plaintiffs identified above as "additional insureds" with respect to liability arising out of Whittion's work.

48.     The coverage afforded under the Whittion policies requires NGM to defend the Additional Insured Plaintiffs identified above against all claims that create potential liability for covered property damage or bodily injury.

**The Sun Tan Drywall Policies**

49.     Sun Tan Drywall performed work at one of the sixteen Developments pursuant to one or more written subcontracts that it entered into with one or more of the Plaintiffs.

50.     Each subcontract required Sun Tan Drywall to maintain commercial general liability insurance with minimum limits of $1,000,000 combined single limit per occurrence,

1    $2,000,000 general aggregate, and $2,000,000 products/completed operations aggregate, and to

2    name one or more of the Plaintiffs, their respective officers, directors, partners, members and

3    employees, as additional insureds under those insurance policies.

4         51.    Sun Tan Drywall obtained the following commercial general liability policies from

5    NGM ("the Sun Tan Drywall policies"):

| Insurer | Policy Number | Policy Period | Additional Insured |
|---------|---------------|---------------|--------------------|
| NGM | MPG7686A | 8/1/09 – 8/1/16 | Centex Homes; Centex Real Estate Construction Company |

8         52.    The Sun Tan Drywall policies were endorsed to cover the Additional Insured

9    Plaintiffs identified above as "additional insureds" with respect to liability arising out of Sun Tan

10   Drywall's work.

11        53.    The coverage afforded under the Sun Tan Drywall policies requires NGM to defend

12   the Additional Insured Plaintiffs identified above against all claims that create potential liability

13   for covered property damage or bodily injury.

14   **The *Adams* Action**

15        54.    On February 19, 2016, homeowners in the Horizon Park development in North Las

16   Vegas, Nevada filed a construction defect complaint entitled *Joseph A. & Judi R. Adams, et al. v.*

17   *Centex Homes*, District Court, Clark County, Nevada, Case No. A-16-732116-D ("*Adams*"),

18   against Centex alleging, among other things, that homes in the development contain defective and

19   negligent design, engineering, materials, and construction, and that these defects caused property

20   damage for which Plaintiff Centex Homes ("Centex") is liable.

21        55.    The *Adams* complaint, pre-litigation NRS Chapter 40 notices of construction

22   defects, and expert reports produced in the *Adams* action allege that the work of West Coast AC

23   caused property damage to the work of others.

24        56.    The *Adams* complaint, pre-litigation NRS Chapter 40 notices of construction

25   defects, and expert reports in the *Adams* action were provided to NGM by Centex and should have

26   been considered by NGM when making its coverage decision.

27        57.    Centex tendered the defense and indemnity of the *Adams* claim to NGM under the

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

West Coast AC policies on or around November 9, 2015.

58.     After a delay of ten months, NGM acknowledged its duty to defend Centex in the *Adams* action under the West Coast AC policies on or around August 11, 2016.

59.     On June 27, 2017, NGM improperly withdrew its defense of Centex in the *Adams* action alleging that there were no allegations of property damage related to West Coast AC's work, even though none of the allegations had changed from the time NGM acknowledged its duty to defend Centex to the date on which NGM improperly withdrew its defense.

60.     NGM has paid only $2,000 towards Centex's defense in the *Adams* matter, even though NGM owes Centex more than $200,000 in defense fees as of the date of the filing of this complaint. Centex will continue to incur defense fees and costs in the *Adams* action.

61.     As a result of the claims alleged in the *Adams* action and NGM's failure to defend Centex, Centex has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Adell* Action**

62.     On April 24, 2015, homeowners in the Paseo Pointe development in Phoenix, Arizona filed a construction defect complaint entitled *Chris Adell, et al. v. Pulte Home Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2015-051756 ("*Adell*"), against Pulte Home Corporation ("Pulte") alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, and that these defects caused damage for which Pulte is liable.

63.     The *Adell* complaint and expert reports produced in the *Adell* action allege that the work of Stucco Systems caused property damage to the work of others.

64.     The *Adell* complaint and expert reports in the *Adell* action were provided to NGM by Pulte and should have been considered by NGM when making its coverage decision.

65.     Pulte tendered the defense and indemnity of the *Adell* claim to NGM under the Stucco Systems policies on or around May 28, 2015.

66.     After a delay of over three months, NGM wrongfully denied Pulte's tender of the *Adell* claim under the Stucco Systems policies on September 16, 2015. Over a year and a half

PAYNE & FEARS LLP

ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

later, on March 1, 2018, NGM acknowledged its duty to defend Pulte in the *Adell* action under the Pacific Stucco policies, even though none of the allegations in *Adell* had changed since NGM wrongfully denied Pulte's tender.

67.     Despite acknowledging its duty to defend Pulte in the *Adell* action, NGM has paid nothing towards Pulte's defense.

68.     NGM purports to assign separate defense counsel to Pulte in the *Adell* action. However, NGM delayed in acknowledging its duty to defend Pulte and by so doing waived any right it may have had to assign counsel to defend Pulte. Furthermore, there are conflicts of interest between NGM and Pulte which entitle Pulte to independent counsel.

69.     As a result of the claims alleged in the *Adams* action and NGM's failure to provide Pulte with a defense, Pulte has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Arcibal* Action**

70.     On February 8, 2017, homeowners in the Vista de Montana development in Buckeye, Arizona filed a construction defect complaint entitled *Virgilio Q. Arcibal, et al. v. Pulte Home Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2016-054648 ("*Arcibal*"), against Pulte alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that Pulte is liable for.

71.     The *Arcibal* complaint and expert reports produced in the *Arcibal* action allege that the work of Stucco Systems caused property damage to the work of others.

72.     The *Arcibal* complaint and expert reports in the *Arcibal* action were provided to NGM by Pulte and should have been considered by NGM when making its coverage decision.

73.     Pulte tendered the defense and indemnity of the *Arcibal* claim to NGM under the Stucco Systems policies on or around July 12, 2016.

74.     After a four-month delay, NGM acknowledged its duty to defend Pulte in the *Arcibal* action under the Stucco Systems policies on November 15, 2016.

75.     Despite acknowledging its duty to defend Pulte in the *Arcibal* action, NGM has

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1  paid nothing towards Pulte's defense.

2        76.       NGM purported to assign separate defense counsel to Pulte in the *Arcibal* action.

3  However, NGM delayed in acknowledging its duty to defend Pulte and by doing so waived any

4  right it may have had assign counsel to defend Pulte. Further, there are conflicts of interest

5  between NGM and Pulte as well as between Pulte and NGM's chosen counsel which entitle Pulte

6  to independent counsel.

7        77.       As a result of the claims alleged in the *Arcibal* action and NGM's failure to provide

8  Pulte with a defense, Pulte has incurred and will continue to incur significant costs, including, but

9  not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

10 **The *Arguello* Action**

11       78.       On September 9, 2016, homeowners in the Desert Oasis development in Surprise,

12 Arizona filed a construction defect complaint entitled *Francisco Arguello, et al. v. Centex Homes,*

13 *Centex Real Estate Construction Company*, Superior Court, Maricopa County, Arizona, Case No.

14 CV2016-054383 ("*Arguello*"), against Centex Homes and Centex Real Estate Construction

15 Company (collectively, "Centex entities") alleging, among other things, that homes in the

16 development contained defective and negligent design, engineering, materials, and construction,

17 that these defects caused damages that the Centex entities are liable for.

18       79.       The *Arguello* complaint and expert reports produced in the *Arguello* action allege

19 that the work of West Coast AC and Sun Tan Drywall caused property damage to the work of

20 others.

21       80.       The *Arguello* complaint and expert reports in the *Arguello* action were provided to

22 NGM by the Centex entities and should have been considered by NGM when making its coverage

23 decision.

24       81.       The Centex entities tendered the defense and indemnity of the *Arguello* claim to

25 NGM under the West Coast AC policies and Sun Tan Drywall policies on or around November

26 25, 2015.

27       82.       After a ten-month delay, NGM acknowledged its duty to defend the Centex entities

28 in the *Arguello* action under the West Coast AC policies on September 20, 2016.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

83. After a thirteen-month delay, NGM acknowledged its duty to defend the Centex entities in the *Arguello* action under the Sun Tan Drywall policies on December 22, 2016.

84. Despite acknowledging its duty to defend the Centex entities in the *Arguello* action, NGM has paid nothing towards the Centex entities' defense.

85. NGM purported to assign separate counsel to defend the Centex entities in the *Arguello* action. However, NGM delayed in acknowledging its duty to defend the Centex entities and by doing so waived any right it may have had to assign counsel to defend the Centex entities. Further, there are conflicts of interest between NGM and the Centex entities as well as between the Centex entities and NGM's chosen counsel which entitle the Centex entities to independent counsel.

86. As a result of the claims alleged in the *Arguello* action and NGM's failure to provide the Centex entities with a defense, the Centex entities have incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Banaszewski* Action**

87. On July 1, 2015, homeowners in the Pecan Creek South development in San Tan Valley, Arizona filed a construction defect complaint entitled *Peter and Andrea L. Banaszewski, et al. v. Centex Homes*, Superior Court, Pinal County, Arizona, Case No. CV2015-01501214 ("*Banaszewski*"), against Centex alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that the Centex is liable for.

88. The *Banaszewski* complaint and expert reports produced in the *Banaszewski* action allege that the work of West Coast AC caused property damage to the work of others.

89. The *Banaszewski* complaint and expert reports in the *Banaszewski* action were provided to NGM by Centex and should have been considered by NGM when making its coverage decision.

90. Centex tendered the defense and indemnity of the *Banaszewski* claim to NGM under the West Coast AC policies on or around January 14, 2016.

91.     After a five-month delay, NGM acknowledged its duty to defend the Centex entities in the *Banaszewski* action under the West Coast AC policies on June 8, 2016.

92.     Despite acknowledging its duty to defend Centex in the *Banaszewski* action, NGM has paid nothing towards Centex's defense.

93.     NGM purported to assign separate counsel to defend Centex in the *Banaszewski* action. However, NGM delayed in acknowledging its duty to defend Centex and by doing so waived any right it may have had to assign counsel to defend Centex. Further, there are conflicts of interest between NGM and Centex as well as between Centex and NGM's chosen counsel which entitle Centex to independent counsel.

94.     As a result of the claims alleged in the *Banaszewski* action and NGM's failure to provide Centex with a defense, Centex has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

### The *Bandoni* Action

95.     On June 9, 2016, homeowners in the Martin Valley development in Coolidge, Arizona filed a construction defect complaint entitled *Carmen Mark Bandoni, et al. v. Pulte Home Corporation; Pulte Development Corporation*, Superior Court, Pinal County, Arizona, Case No. CV201601001 ("*Bandoni*"), against Pulte Home Corporation and Pulte Development Corporation (collectively, the "Pulte entities") alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that the Pulte entities are liable for.

96.     The *Bandoni* complaint and expert reports produced in the *Bandoni* action allege that the work of Cobra Plastering caused property damage to the work of others.

97.     The *Bandoni* complaint and expert reports in the *Bandoni* action were provided to NGM by the Pulte entities and should have been considered by NGM when making its coverage decision.

98.     The Pulte entities tendered the defense and indemnity of the *Bandoni* claim to NGM under the Cobra Plastering policies on or around October 9, 2015.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

99.     After an eight-month delay, NGM acknowledged its duty to defend the Pulte entities in the *Bandoni* action under the Cobra Plastering policies on June 10, 2016.

100.     Despite acknowledging its duty to defend the Pulte entities in the *Bandoni* action, NGM has paid nothing towards the Pulte entities' defense.

101.     NGM purported to assign separate counsel to defend the Pulte entities in the *Bandoni* action. However, NGM delayed in acknowledging its duty to defend the Pulte entities and by doing so waived any right it may have had to assign counsel to defend the Pulte entities. Further, there are conflicts of interest between NGM and the Pulte entities as well as between the Pulte entities and NGM's chosen counsel which entitle the Pulte entities to independent counsel.

102.     As a result of the claims alleged in the *Bandoni* action and NGM's failure to provide the Pulte entities with a defense, the Pulte entities have incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Banning* Action**

103.     On May 19, 2017, homeowners in the White Tank Foothills development in Maricopa County, Arizona filed a construction defect complaint entitled *Ronnie & Yirong Banning, et al. v. Pulte Home Corporation and Pulte Development Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2017-007142 ("*Banning*"), against Pulte Home Corporation and Pulte Development Corporation (collectively, "Pulte entities") alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that the Pulte entities are liable for.

104.     The *Banning* complaint and expert reports produced in the *Banning* action allege that the work of Stucco Systems caused property damage to the work of others.

105.     The *Banning* complaint and expert reports in the *Banning* action were provided to NGM by the Pulte entities and should have been considered by NGM when making its coverage decision.

106.     The Pulte entities tendered the defense and indemnity of the *Banning* claim to NGM under the Stucco Systems policies on or around May 5, 2017.

107.    After a three-month delay, NGM acknowledged its duty to defend the Pulte entities in the *Banning* action under the Stucco Systems policies on August 15, 2017.

108.    Despite acknowledging its duty to defend the Pulte entities in the *Banning* action, NGM has paid nothing towards the Pulte entities' defense.

109.    NGM purported to assign separate counsel to defend the Pulte entities in the *Banning* action. However, NGM delayed in acknowledging its duty to defend the Pulte entities and by doing so waived any right it may have had to assign counsel to defend the Pulte entities. Further, there are conflicts of interest between NGM and the Pulte entities as well as between the Pulte entities and NGM's chosen counsel which entitle the Pulte entities to independent counsel.

110.    As a result of the claims alleged in the *Banning* action and NGM's failure to provide the Pulte entities with a defense, the Pulte entities have incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Brown* Arbitration**

111.    On November 7, 2017, homeowners in the Sun City Festival development in Buckeye, Arizona, including the lead claimants, Carl T. and Linda S. Brown, filed an arbitration demand with the American Arbitration Association against Pulte ("*Brown*"), alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that Pulte is liable for.

112.    The *Brown* pre-litigation notices, arbitration demand, and expert reports produced in *Brown* allege that the work of Stucco Systems and Cobra Plastering caused property damage to the work of others.

113.    The *Brown* pre-litigation notices, arbitration demand, and expert reports iwere provided to NGM by Pulte and should have been considered by NGM when making its coverage decision.

114.    Pulte tendered the defense and indemnity of the *Brown* claim to NGM under the Stucco Systems and Cobra Plastering policies on or around November 21, 2016.

115.    After a five-month delay, NGM acknowledged its duty to defend Pulte in *Brown*

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1   under the Stucco Systems policies and the Cobra Plastering policies on April 14, 2017.

2       116.   Despite acknowledging its duty to defend Pulte in *Brown*, NGM has paid nothing

3   towards Pulte's defense.

4       117.   NGM purported to assign separate counsel to defend Pulte in *Brown*. However,

5   NGM delayed in acknowledging its duty to defend Pulte and by doing so waived any right it may

6   have had to assign counsel to defend Pulte. Further, there are conflicts of interest between NGM

7   and Pulte as well as between Pulte and NGM's chosen counsel which entitle Pulte to independent

8   counsel.

9       118.   As a result of the claims alleged in *Brown* and NGM's failure to provide Pulte with

10   a defense, Pulte has incurred and will continue to incur significant costs, including, but not limited

11   to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

12   **The *Chavez* Action**

13       119.   On June 4, 2014, homeowners in the Anthem at Merrill Ranch development in

14   Florence, Arizona filed a construction defect complaint entitled *Joe and Brenda Chavez, et al. v.*

15   *Pulte Home Corporation*, Superior Court, Pinal County, Arizona, Case No. CV2014-01401446

16   ("*Chavez*"), against Pulte alleging, among other things, that homes in the development contained

17   defective and negligent design, engineering, materials, and construction, that these defects caused

18   damages that Pulte is liable for.

19       120.   The *Chavez* complaint and expert reports produced in the *Chavez* action allege that

20   the work of Stucco Systems and Cobra Plastering caused property damage to the work of others.

21       121.   The *Chavez* complaint and expert reports in the *Chavez*  action were provided to

22   NGM by Pulte and should have been considered by NGM when making its coverage decision.

23       122.   Pulte tendered the defense and indemnity of the *Chavez* claim to NGM under the

24   Stucco Systems policies and the Cobra Plastering policies on or around October 30, 2014.

25       123.   After a delay of a year and a half, NGM improperly denied its Pulte's tender of the

26   *Chavez* action under the Cobra Plastering policies on April 18, 2016.

27       124.   More than two years after Pulte tendered its defense to NGM under the Cobra

28   Plastering policies and Stucco Systems policies, NGM acknowledged its duty to defend Pulte in

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1   the *Chavez* action under the Cobra Plastering policies and the Stucco Systems policies on

2   November 8, 2016.

3       125.   Despite acknowledging its duty to defend Pulte in the *Chavez* action, NGM has

4   paid nothing towards Pulte's defense.

5       126.   NGM purported to assign separate counsel to defend Pulte in the *Chavez* action.

6   However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and by doing so

7   waived any right it may have had to assign counsel to defend Pulte. Further, there are conflicts of

8   interest between NGM and Pulte as well as between Pulte and NGM's chosen counsel which

9   entitle Pulte to independent counsel.

10      127.   As a result of the claims alleged in the *Chavez* action and NGM's failure to provide

11  Pulte with a defense, Pulte has incurred and will continue to incur significant costs, including, but

12  not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

13  **The *Castanos* Action**

14      128.   On November 8, 2016, homeowners in the White Tank Foothills development in

15  Waddell, Arizona filed a construction defect complaint entitled *Maj Lucas C. Castanos, Jr., et al.*

16  *v. Pulte Home Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2016-

17  054810 ("*Castanos*"), against Pulte alleging, among other things, that homes in the development

18  contained defective and negligent design, engineering, materials, and construction, that these

19  defects caused damages that Pulte is liable for.

20      129.   The *Castanos* complaint and expert reports produced in the *Castanos* action allege

21  that the work of Stucco Systems caused property damage to the work of others.

22      130.   The *Castanos* complaint and expert reports in the *Castanos* action were provided

23  to NGM by Pulte and should have been considered by NGM when making its coverage decision.

24      131.   Pulte tendered the defense and indemnity of the *Castanos* claim to NGM under the

25  Stucco Systems policies on or around September 9, 2016.

26      132.   After a delay of over three-months, NGM acknowledged its duty to defend Pulte in

27  the *Castanos* action under the Stucco Systems policies on December 22, 2016.

28      133.   Despite acknowledging its duty to defend Pulte in the *Castanos* action, NGM has

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1    paid nothing towards Pulte's defense.

2        134.    NGM purported to assign separate counsel to defend Pulte in the *Castanos* action.

3    However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and by doing so

4    waived any right it may have had to assign counsel to defend Pulte. Further, there are conflicts of

5    interest between NGM and Pulte as well as between Pulte and NGM's chosen counsel which

6    entitle Pulte to independent counsel.

7        135.    As a result of the claims alleged in the *Castanos* action and NGM's failure to

8    provide Pulte with a defense, Pulte has incurred and will continue to incur significant costs,

9    including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other

10    expenses.

11    **The *Cunningham* Action**

12        136.    On March 28, 2017, homeowners in the Vista De Montana development in

13    Buckeye, Arizona filed a construction defect complaint entitled *Brian & Sharon Cunningham., et*

14    *al. v. Pulte Home Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2017-

15    005275 ("*Cunningham*"), against Pulte alleging, among other things, that homes in the

16    development contained defective and negligent design, engineering, materials, and construction,

17    that these defects caused damages that Pulte is liable for.

18        137.    The *Cunningham* complaint and expert reports produced in the *Cunningham* action

19    allege that the work of Stucco Systems caused property damage to the work of others.

20        138.    The *Cunningham* complaint and expert reports in the *Cunningham* action were

21    provided to NGM by Pulte and should have been considered by NGM when making its coverage

22    decision.

23        139.    Pulte tendered the defense and indemnity of the *Cunningham* claim to NGM under

24    the Stucco Systems policies on or around November 22, 2015.

25        140.    After a delay of five months, NGM denied Pulte's tender of its defense in

26    *Cunningham* under the Stucco Systems policies on March 16, 2016.

27        141.    After a delay of nearly two years, NGM acknowledged its duty to defend Pulte in

28    the *Cunningham* action under the Stucco Systems policies on June 28, 2017.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

142.    Despite acknowledging its duty to defend Pulte in the *Cunningham* action, NGM has paid nothing towards Pulte's defense.

143.    NGM purported to assign separate counsel to defend Pulte in the *Cunningham* action. However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and by doing so waived any right it may have had to assign counsel to defend Pulte. Further, there are conflicts of interest between NGM and Pulte as well as between Pulte and NGM's chosen counsel which entitle Pulte to independent counsel.

144.    As a result of the claims alleged in the *Cunningham* action and NGM's failure to provide Pulte with a defense, Pulte has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Demiris* Action**

145.    On July 13, 2017, homeowners in the Paseo Pointe Replat development in Laveen, Arizona filed a construction defect complaint entitled *Cristina Demiris., et al. v. Pulte Development Corporation, Centex Real Estate Construction Company and Pulte Home Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2017-010394 ("*Demiris*"), against Pulte and the Centex entities alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that Pulte and the Centex entities are liable for.

146.    The *Demiris* complaint and expert reports produced in the *Demiris* action allege that the work of Stucco Systems caused property damage to the work of others.

147.    The *Demiris* complaint and expert reports in the *Demiris* action were provided to NGM by Pulte and the Centex entities and should have been considered by NGM when making its coverage decision.

148.    Pulte and the Centex entities tendered the defense and indemnity of the *Demiris* claim to NGM under the Stucco Systems policies on or around March 30, 2017.

149.    After a delay of over eight months, NGM acknowledged its duty to defend Pulte and the Centex entities in the *Demiris* action under the Stucco Systems policies on February 5,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1   2018.

2       150.    Despite acknowledging its duty to defend Pulte and the Centex entities in the

3   *Demiris* action, NGM has paid nothing towards Pulte and the Centex entities' defense.

4       151.    NGM purported to assign separate counsel to defend Pulte and the Centex entities

5   in the *Demiris* action. However, NGM unreasonably delayed in acknowledging its duty to defend

6   Pulte and the Centex entities and by doing so waived any right it may have had to assign counsel

7   to defend Pulte and the Centex entities. Further, there are conflicts of interest between NGM and

8   Pulte and the Centex entities as well as between Pulte and the Centex entities and NGM's chosen

9   counsel which entitle Pulte and the Centex entities to independent counsel.

10      152.    As a result of the claims alleged in the *Demiris* action and NGM's failure to

11  provide Pulte and the Centex entities with a defense, Pulte and the Centex entities have incurred

12  and will continue to incur significant costs, including, but not limited to, forensic, investigative,

13  and repair costs, attorneys' fees and other expenses.

14  **The *Alford* Action**

15      153.    On April 13, 2017, homeowners in the Mountain Horizons development in Mesa,

16  Arizona filed a construction defect complaint entitled *Kathryn Alford., et al. v. Pulte Home*

17  *Corporation*, Superior Court, Maricopa County, Arizona, Case No. CV2017-003766 ("*Alford*"),

18  against Pulte alleging, among other things, that homes in the development contained defective and

19  negligent design, engineering, materials, and construction, that these defects caused damages that

20  Pulte is liable for.

21      154.    The *Alford* complaint and expert reports produced in the *Alford* action allege that

22  the work of Stucco Systems caused property damage to the work of others.

23      155.    The *Alford* complaint and expert reports in the *Alford* action were provided to

24  NGM by Pulte and should have been considered by NGM when making its coverage decision.

25      156.    Pulte tendered the defense and indemnity of the *Alford* claim to NGM under the

26  Stucco Systems policies on or around April 29, 2016.

27      157.    After a delay of nearly five months, NGM improperly denied Pulte's tender on

28  September 8, 2016.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

158.    After a delay of a year and a half, NGM acknowledged its duty to defend Pulte in the *Alford* action under the Stucco Systems policies on September 11, 2017.

159.    Despite acknowledging its duty to defend Pulte in the *Alford* action, NGM has paid nothing towards Pulte's defense.

160.    NGM purported to assign separate counsel to defend Pulte in the *Alford* action. However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and by doing so waived any right it may have had to assign counsel to defend Pulte. Further, there are conflicts of interest between NGM and Pulte as well as between Pulte and NGM's chosen counsel which entitle Pulte to independent counsel.

161.    As a result of the claims alleged in the *Alford* action and NGM's failure to provide Pulte with a defense, Pulte has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

## The *Mendoza* Action

162.    On June 19, 2015, homeowners in the Anthem at Merrill Ranch development in Mesa, Arizona filed a construction defect complaint entitled *Jose Mendoza., et al. v. Pulte Home Corporation*, Superior Court, Pinal County, Arizona, Case No. CV2015-01501155 ("*Mendoza*"), against Pulte alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that Pulte is liable for.

163.    The *Mendoza* complaint and expert reports produced in the *Mendoza* action allege that the work of Stucco Systems, Cobra Plastering, and Anozira caused property damage to the work of others.

164.    The *Mendoza* complaint and expert reports in the *Mendoza* action were provided to NGM by Pulte and should have been considered by NGM when making its coverage decision.

165.    Pulte tendered the defense and indemnity of the *Mendoza* claim to NGM under the Stucco Systems policies, Cobra Plastering policies, and Anozira policies on or around February 2, 2015.

166.    After a delay of over five months, NGM improperly denied Pulte's tender under the

1  Stucco Systems policies, Cobra Plastering policies, and Anozira policies on May 23, 2016.

2  167.   After a delay of over eight months, NGM acknowledged its duty to defend Pulte in

3  the *Mendoza* action under the Stucco Systems policies, Cobra Plastering policies, and Anozira

4  policies on October 21, 2016.

5  168.   Despite acknowledging its duty to defend Pulte in the *Medoza* action, NGM has

6  paid nothing towards Pulte's defense.

7  169.   NGM purported to assign separate counsel to defend Pulte in the *Medoza* action.

8  However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and by doing so

9  waived any right it may have had to assign counsel to defend Pulte. Further, there are conflicts of

10  interest between NGM and Pulte as well as between Pulte and NGM's chosen counsel which

11  entitle Pulte to independent counsel.

12  170.   As a result of the claims alleged in the *Mendoza* action and NGM's failure to

13  provide Pulte with a defense, Pulte has incurred and will continue to incur significant costs,

14  including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other

15  expenses.

16  **The *Nesbitt* Arbitration**

17  171.   On March 6, 2015, homeowners in the Sun City Festival development in Buckeye,

18  Arizona, including the lead claimants, Roger and Patti Nesbitt, filed a demand for arbitration of

19  their construction defect claims with the American Arbitration Association against Pulte and Pulte

20  Development Corp. (collectively, the "Pulte entities") alleging, among other things, that homes in

21  the development contained defective and negligent design, engineering, materials, and

22  construction, that these defects caused damages that the Pulte entities are liable for.

23  172.   The *Nesbitt* arbitration demand and expert reports produced in the *Nesbitt*

24  arbitration allege that the work of Stucco Systems and Cobra Plastering caused property damage

25  to the work of others.

26  173.   The *Nesbitt* arbitration demand and expert reports in the *Nesbitt* arbitration were

27  provided to NGM by the Pulte entities and should have been considered by NGM when making its

28  coverage decision.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

174.    The Pulte entities tendered the defense and indemnity of the *Nesbitt* claim to NGM under the Stucco Systems policies and the Cobra Plastering policies on or around November 17, 2015.

175.    After delays of nearly five months and seven months, NGM improperly denied the Pulte entities' tender under the Stucco Systems policies and the Cobra Plastering policies on April 6, 2016 and June 16, 2016, respectively.

176.    After a delay of nearly nine months, NGM acknowledged its duty to defend the Pulte entities in *Nesbitt* under the Stucco Systems policies and the Cobra Plastering policies on August 9, 2016.

177.    Despite acknowledging its duty to defend the Pulte entities in *Nesbitt*, NGM has paid nothing towards the Pulte entities' defense.

178.    NGM purported to assign separate counsel to defend the Pulte entities in *Nesbitt*. However, NGM unreasonably delayed in acknowledging its duty to defend the Pulte entities and by doing so forfeited any right it may have had to assign counsel to defend the Pulte entities. Further, there are conflicts of interest between NGM and the Pulte entities as well as between the Pulte entities and NGM's chosen counsel which entitle the Pulte entities to independent counsel.

179.    As a result of the claims alleged in *Nesbitt* and NGM's failure to provide the Pulte entities with a defense, the Pulte entities have incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Anderson/Steeman* Action**

180.    On July 7, 2017, homeowners in the Anthem at Merrill Ranch development in Mesa, Arizona filed a construction defect complaint entitled *Ken & Bettie Anderson., et al. v. Pulte Development Corporation, Centex Real Estate Construction Co. and Pulte Home Corporation,* Superior Court, Pinal County, Arizona, Case No. CV2017-01700827 ("*Anderson*"), against the Pulte entities and Centex alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that the Pulte entities and Centex are liable for.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

181.   The *Anderson* complaint and expert reports produced in the *Anderson* action allege that the work of Stucco Systems, Anozira, and Whitton caused property damage to the work of others.

182.   The *Anderson* complaint and expert reports in the *Anderson* action were provided to NGM by Pulte and Centex and should have been considered by NGM when making its coverage decision.

183.   Pulte and Centex tendered the defense and indemnity of the *Anderson* claim to NGM under the Stucco Systems policies, Whitton policies, and Anozira policies on or around June 29, 2017.

184.   After a delay of seven months, NGM acknowledged its duty to defend Centex and Pulte in the *Anderson* action under the Stucco Systems policies and Anozira policies on January 3, 2018.

185.   After a delay of nine months, NGM acknowledged its duty to defend Pulte and Centex in the *Anderson* action under the Whitton policies on June 4, 2018.

186.   Despite acknowledging its duty to defend Pulte and Centex in the *Anderson* action, NGM has paid nothing towards Pulte's defense.

187.   NGM purported to assign separate counsel to defend Pulte and Centex in the *Anderson* action. However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and Centex and by doing so forfeited any right it may have had to assign counsel to defend Pulte and Centex. Further, there are conflicts of interest between NGM and Pulte and Centex as well as between Pulte and Centex and NGM's chosen counsel which entitle Pulte and Centex to independent counsel.

188.   As a result of the claims alleged in the *Anderson* action and NGM's failure to provide Pulte and Centex with a defense, Pulte and Centex have incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

**The *Stetson Valley* Claim**

189.   On March 7, 2017, homeowners in the Stetson Valley development in Phoenix,

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

Arizona forwarded a pre-litigation notice of construction defects to Pulte ("*Stetson Valley Claim*"), alleging, among other things, that homes in the development contained defective and negligent design, engineering, materials, and construction, that these defects caused damages that Pulte is liable for.

190.    The *Stetson Valley Claim* expert reports produced therein allege that the work of Stucco Systems caused property damage to the work of others.

191.    The *Stetson Valley Claim* and expert reports therein were provided to NGM by Pulte and should have been considered by NGM when making its coverage decision.

192.    Pulte tendered the defense and indemnity of the *Stetson Valley Claim* claim to NGM under the Stucco Systems policies on or around October 25, 2017.

193.    After a delay of over eight months, NGM acknowledged its duty to defend Pulte in the *Stetson Valley Claim* under the Stucco Systems policies on July 2, 2018.

194.    Despite acknowledging its duty to defend Pulte in the *Stetson Valley Claim*, NGM has paid nothing towards Pulte's defense.

195.    NGM purported to assign separate counsel to defend Pulte in the *Stetson Valley Claim*. However, NGM unreasonably delayed in acknowledging its duty to defend Pulte and by doing so forfeited any right it may have had to assign counsel to defend Pulte. Further, there are conflicts of interest between NGM and Pulte as well as between Pulte and NGM's chosen counsel which entitle Pulte to independent counsel.

196.    As a result of the claims alleged in the *Stetson Valley Claim* and NGM's failure to provide Pulte with a defense, Pulte has incurred and will continue to incur significant costs, including, but not limited to, forensic, investigative, and repair costs, attorneys' fees and other expenses.

## FIRST CAUSE OF ACTION
### Breach of Contract
(By All Plaintiffs Against NGM)

197.    Plaintiffs reallege the allegations contained in paragraphs 1 through 196, inclusive, and incorporates them by reference as though fully set forth herein.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

198.     Plaintiffs requested that NGM defend Plaintiffs against the 15 construction defect claims as described more fully above. Plaintiffs have performed all obligations owing under each of the policies in connection with their tenders of defense, and Plaintiffs have satisfied all relevant conditions precedent.

199.     NGM has failed to discharge its contractual duties to defend Plaintiffs against the 15 construction defect claims described herein. More particularly, NGM (1) breached its contracts by failing to promptly respond to Plaintiffs' tenders; (2) breached its contracts by refusing to fully defend Plaintiffs, and in most cases paying nothing towards Plaintiffs' defense although NGM has acknowledged its duty to defend Plaintiffs in all 15 of the construction defect claims; and (3) refuses to acknowledge its duty to provide Plaintiffs with a full and conflict-free defense.

200.     As a direct and proximate result of NGM's conduct as alleged in this Complaint, Plaintiffs have been damaged and will continue to be damaged in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
(By All Plaintiffs Against NGM)

201.     Centex realleges the allegations contained in paragraphs 1 through 200, inclusive, and incorporates them by reference as though fully set forth herein.

202.     NGM owes Plaintiffs a duty of good faith and fair dealing, obligating NGM to put Plaintiffs' interests equal with or ahead of their own interests and to do nothing to deprive Plaintiffs of policy benefits.

203.     Rather than honor its obligations, NGM has instead sought to protect its own interests and has subordinated Plaintiffs' interests by refusing to discharge contractual duties without reasonable grounds or good cause.

204.     In addition, NGM has acted with knowledge or reckless disregard of the lack of a reasonable grounds or good cause.

205.     Accordingly, NGM has deprived Plaintiffs of their rights and benefits under their policies.  For example:

PAYNE & FEARS LLP

ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

a.      Pursuant to clearly applicable law, NGM has a duty to promptly investigate and respond to Plaintiffs' tenders and indicate whether it would defend Plaintiffs against the claims involving the Developments.  NGM understands and is fully aware of this duty.  Despite its knowledge of this obligation, NGM has failed to respond to Plaintiffs' tenders in a timely fashion. On information and belief, these delays violate NGM's own internal policies.  To further delay making coverage decisions and avoid assuming the financial burden of defending Plaintiffs, on some occasions NGM requested documents that Plaintiffs had already supplied to NGM so as to force Plaintiffs to continue defending themselves and incurring costs without NGM's support. NGM delayed rendering coverage decisions in conscious disregard of the risk that these delays would jeopardize Plaintiffs' ability to adequately defend themselves against the claims involving the Developments, and would jeopardize Plaintiffs' ability to settle those matters. NGM's decisions to delay responding to Plaintiffs' tenders were motivated by a desire to unfairly enhance its own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Plaintiffs. NGM acted in a deliberate and concerted fashion to achieve this self-serving economic objective. NGM's conduct in this regard tortiously breaches the duty of good faith and fair dealing owed to Plaintiffs, and recklessly disregards Plaintiffs' economic and property rights.

b.      Pursuant to clearly applicable law, NGM has a duty to fully defend Plaintiffs, as opposed to only providing an equitable or partial defense based on the liability of its named insureds. NGM is fully aware of this duty.  Despite NGM's knowledge that it has a duty to defend the entirety of the claims related to the Developments pursuant to clearly applicable law, it unreasonably refused to do so.  For example, NGM agreed to defend Plaintiffs for all of the claims, but asserts that it only has to provide Plaintiffs with a partial defense in proportion to the liability of NGM's named insureds. NGM's conduct in this regard is unreasonable and tortiously breaches its duty of good faith and fair dealing owed to Plaintiffs.

c.      NGM has a duty to supply Plaintiffs independent counsel because it cannot provide a conflict free defense. NGM is fully aware of this duty.  Despite NGM's knowledge of its duty to supply Plaintiffs independent counsel because of its reservations of rights and the resulting

conflicts of interest, NGM has tried to force Plaintiffs to accept new, conflicted defense counsel. NGM's attempts to force Plaintiffs to accept new, conflicted defense counsel are motivated by a desire to enhance unfairly its own profits by avoiding its contractual obligations and ignoring the contractual rights and economic interests of Plaintiffs. NGM acted in a deliberate fashion to achieve this self-serving economic objective.  NGM's conduct in this regard tortiously breaches the duty of good faith and faith dealing owed to Plaintiffs and recklessly disregards Plaintiffs' economic and property rights.

206.    NGM's conduct as alleged in this Complaint is part of a pattern of unfair claims practices intentionally engaged in by NGM to enhance unfairly its own profits by avoiding contractual obligations and ignoring the contractual rights and economic interests of Plaintiffs and other additional insureds.  These systematic practices include: (1) failing to respond promptly to tenders from additional insureds; (2) wrongfully denying additional insureds coverage owed under policies; and (3) refusing to supply a full and conflict-free defense to additional insureds as required by law and instead trying to limit coverage obligations to funding only a small fraction of the additional insured's defense.

207.    As a direct and proximate result of NGM's tortious breach of the duty of good faith and fair dealing, Plaintiffs have suffered damages in an amount to be proven at trial, including without limitation, legal costs incurred to obtain the benefits of the respective policies.

208.    In addition, NGM's conduct as alleged in this Complaint is despicable and has been carried out in willful and conscious disregard of Plaintiffs' rights and economic interests, and is malicious, fraudulent and oppressive.  Accordingly, NGM's conduct entitles Plaintiffs to punitive damages.

209.    NGM's malicious, fraudulent, and oppressive conduct includes, for example:

a.    As described above, NGM was fully aware of its duty to promptly investigate and respond to Plaintiffs' tenders and indicate whether it would defend and indemnify Plaintiffs, but instead delayed responding to Plaintiffs' tenders.  NGM knows that failing to promptly respond to Plaintiffs' tenders and to immediately defend it violates Plaintiffs' contractual rights, but NGM does so anyway in willful and conscious disregard of Plaintiffs' rights.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

b.      As described above, NGM is fully aware of its duty to defend additional insureds, like Plaintiffs, and to indemnify them for liability arising out of the work of their named insured, but routinely attempts to skirt these obligations by treating additional insureds differently from its named insureds.  NGM knows that this behavior violates the rights of additional insureds, like Plaintiffs, but intentionally tries to deprive additional insureds, like Plaintiffs, of their policy benefits in willful and conscious disregard of their rights.

c.      As described above, NGM was and is fully aware of its duty to supply Plaintiffs a full defense as opposed to only providing an equitable or partial defense based on the liability of its named insured. NGM knows that failing to provide Plaintiffs a full defense violates their contractual rights, but NGM intentionally fails to provide a complete defense, in willful and conscious disregard of Plaintiffs' rights.

d.      As described above, NGM was and is fully aware of its duty to supply Plaintiffs independent counsel because it cannot provide a conflict-free defense and because it breached its insurance contract by failing to immediately defend Plaintiffs. NGM knows that failing to provide Plaintiffs with independent counsel violates their rights, but intentionally tries to deprive Plaintiffs of independent counsel in willful and conscious disregard of Plaintiffs' rights.

## THIRD CAUSE OF ACTION
### Violations of Nevada's Unfair Claims Settlement Practices
(By All Plaintiffs Against NGM)

210.    Plaintiffs reallege the allegations contained in paragraphs 1 through 209, inclusive, and incorporates them by reference as though fully set forth herein.

211.    NGM's conduct constitutes a violation of one or more of the following sub-sections of Nev. Rev. Stat. Ann. § 686A.310:

a.      Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

b.      Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims under insurance policies.

1    c.    Failing to affirm or deny coverage of claims within a reasonable time after

2    proof of loss requirements have been completed and submitted by the insured.

3    d.    Failing to effectuate prompt, fair and equitable settlements of claims in

4    which liability of the insurer has become reasonably clear.

5    e.    Compelling insureds to institute litigation to recover amounts due under an

6    insurance policy by offering substantially less than the amounts ultimately recovered in actions

7    brought by such insureds when the insureds have made claims for amounts reasonably similar to

8    the amounts ultimately recovered.

9    f.    On information and belief, NGM has engaged in other conduct in the

10   handling of the claims related to the Developments that constitutes unfair practices under other

11   provisions of NRS 686A.310.

12   212.    As a direct and proximate result of NGM's violations of Nev. Rev. Stat. Ann. §

13   686A.310, Plaintiffs have sustained damages in an amount within the jurisdictional limits of this

14   Court, including, but not limited to, punitive damages.

15   213.    As a direct and proximate result of NGM's violations of Nev. Rev. Stat. Ann. §

16   686A.310, Plaintiffs have incurred attorneys' fees, court costs and other expenses in bringing this

17   action.

## FOURTH CAUSE OF ACTION
### (Declaratory Relief)

20   214.    Plaintiffs reallege the allegations contained in paragraphs 1 through 213, inclusive,

21   and incorporates them by reference as though fully set forth herein.

22   215.    An actual controversy has arisen and now exists between Plaintiffs, on the one

23   hand, and NGM, on the other hand, in that Plaintiffs contend that under the policies described

24   herein, NGM owes a separate and independent duty to promptly provide Plaintiffs with a full and

25   conflict-free defense in the claims related to the Developments.

26   216.    Plaintiffs are informed and believe that NGM contend otherwise.

27   217.    Plaintiffs desire a judicial determination as follows:

28   a.    that NGM owes a separate and independent duty to defend Plaintiffs in each

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

of the claims described herein;

b.   that the scope of this duty is to provide Plaintiffs with an immediate, conflict-free and full defense;

c.   that the obligations of NGM to provide Plaintiffs with an immediate, conflict-free, and full defense is not diminished or reduced when other insurers owe Plaintiffs this same duty.

d.   that NGM must provide Plaintiffs with independent counsel in the claims described herein due to NGM's delay in providing Plaintiffs with a defense and due to the conflicts of interest between NGM and Plaintiffs and the conflicts of interest between Plaintiffs and NGM's chosen counsel.

218.   A declaratory judgment is both proper and necessary so that the respective rights, duties, and obligations of Centex and Defendants may be determined.

### PRAYER

WHEREFORE, Plaintiffs pray for judgment against NGM as follows:

1.   **FIRST CAUSE OF ACTION**:

a.   For general and specific damages in an amount to be proven at trial;

b.   For all costs and expenses at the full extent permitted by law;

c.   For pre-judgment interest and post-judgment interest at the full extent permitted by law;

d.   For attorneys' fees to the extent recoverable by applicable law; and

e.   For such other and further relief as the Court deems fair and proper.

2.   **SECOND CAUSE OF ACTION**:

a.   For general and specific damages in an amount to be proven at trial;

b.   For punitive damages at the full extent permitted by law;

c.   For all costs and expenses at the full extent permitted by law;

d.   For pre-judgment interest and post-judgment interest at the full extent permitted by law;

e.   For attorneys' fees to the extent recoverable by applicable law; and

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

1    f.  For such other and further relief as the Court deems fair and proper.

2   3.  **THIRD CAUSE OF ACTION**:

3    a.  For general and specific damages in an amount to be proven at trial;

4    b.  For punitive damages at the full extent permitted by law;

5    c.  For all costs and expenses at the full extent permitted by law;

6    d.  For pre-judgment interest and post-judgment interest at the full extent

7 permitted by law;

8    e.  For attorneys' fees to the extent recoverable by applicable law; and

9    f.  For such other and further relief as the Court deems fair and proper.

10   4.  **FOURTH CAUSE OF ACTION**:

11    a.  For declaratory relief as described above;

12    b.  For all costs and expenses at the full extent permitted by law;

13    c.  For pre-judgment interest and post-judgment interest at the full extent

14 permitted by law;

15    d.  For attorneys' fees to the extent recoverable by applicable law; and

16    e.  For such other and further relief as the Court deems fair and proper.

17 DATED: July 23, 2018     PAYNE & FEARS LLP

18

19        By   */s/ Sarah J. Odia*

20          SCOTT S. THOMAS, NV Bar No. 7937
           SARAH J. ODIA, NV Bar No. 11053

21          6385 S. Rainbow Blvd., Suite 220
           Las Vegas, Nevada 89118

22          Tel. (702) 851-0300

23          Attorneys for CENTEX HOMES, CENTEX
           REAL ESTATE CONSTRUCTION COMPANY,

24          PULTE HOME CORPORATION, AND PULTE
           DEVELOPMENT CORPORATION

25

26

27

28

*PAYNE & FEARS LLP*
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

DATED: July 23, 2018                    PAYNE & FEARS  LLP


By    _/s/ Sarah J. Odia_
      SCOTT S. THOMAS, NV Bar No. 7937
      SARAH J. ODIA, NV Bar No. 11053
      6385 S. Rainbow Blvd., Suite 220
      Las Vegas, Nevada 89118
      Tel. (702) 851-0300

      Attorneys for  CENTEX HOMES, CENTEX
      REAL ESTATE CONSTRUCTION COMPANY,
      PULTE HOME CORPORATION, AND PULTE
      DEVELOPMENT CORPORATION

4831-9863-5372.1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
6385 S. RAINBOW BLVD, SUITE 220
LAS VEGAS, NEVADA 89118
(702) 851-0300