WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Centex Homes, et al., | No. CV-19-01392-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| NGM Insurance Company, | |
| Defendant. | |

Before the Court is the parties' Joint Request for Hearing on Discovery Dispute Regarding Waiver of Privilege (Doc. 123) (the "Motion"). Plaintiffs seek production of certain claim notes that Defendant has partially redacted on work product and attorney-client privilege grounds. The Court ordered supplemental briefing on the issues raised in the Motion, (Doc. 126), and held a discovery dispute hearing (the "Hearing") with the parties on September 17, 2020.

## I.     BACKGROUND

Defendant has produced claim notes in seventeen construction defect cases (the "Underlying Cases") and redacted portions thereof on the bases of the attorney-client privilege and the work product doctrine. On August 28, 2020, Plaintiffs deposed Defendant's Rule 30(b)(6) witness, Brian Brennan. (Doc. 123 at 2.) Plaintiffs now contend that, in light of Mr. Brennan's testimony, they are entitled to unredacted copies of the claim notes in the Underlying Cases for three reasons. (*Id.*)

First, Plaintiffs argue Defendant's coverage counsel "acted at times as a claims

adjuster, not as a legal advisor," and thus, Plaintiffs say, the attorney-client privilege should not apply. (Doc. 129 at 4.) Second, Plaintiffs allege that, to the extent the claim notes are privileged, Defendant impliedly waived the attorney-client privilege by implicating its counsel's advice as part of its good faith defense. (*Id.* at 3.) Last, Plaintiffs contend the claim notes should not be afforded work-product protection because they were either created in the ordinary course of adjusting insurance claims or, to the extent the work product doctrine applies, Defendant waived its protection. (*Id.* at 4–5.)

Defendant contends that there is no evidence that its coverage counsel performed the functions of a claims adjuster and maintains it has not waived either the attorney-client privilege or the work product doctrine. (Doc. 123 at 2.) Defendant further argues that Plaintiffs have not established any basis to obtain broad discovery of the unredacted claim notes for all the Underlying Cases. (*Id.* at 3.)

## II. DISCUSSION

The following issues are before the Court: (1) whether Defendant's coverage counsel acted as a claims adjuster in the Underlying Cases such that the attorney-client privilege should not apply; (2) to the extent the claim notes are privileged, whether Defendant impliedly waived the attorney-client privilege by placing its counsel's advice at issue; and (3) whether the claim notes are subject to work-product protection. The Court addresses each issue in turn.

### A. Attorney-Client Privilege

Plaintiffs first argue that, because Defendant's counsel acted at times as a claims adjuster, counsel's work in that role has never been protected by the attorney-client privilege. (Doc. 129 at 4.) Defendant contends there is no evidence "its counsel was 'adjusting' the additional insured claims rather than providing legal advice to [Defendant]." (Doc. 128 at 2.)

In Arizona, the attorney-client privilege is set forth in A.R.S. § 12-2234. The attorney-client privilege only protects communications that are "made to or by [a] lawyer for the purpose of securing or giving legal advice[.]" *Samaritan Found. v. Goodfarb*, 862

P.2d 870, 874 (Ariz. 1993). "Thus, not all communications to [or by] one's lawyer are privileged." *Id.* Indeed, "merely assigning an attorney to perform an ordinary insurance business function does not 'cloak with privilege matters that would otherwise be discoverable.'" *Nerdig v. Electric Ins. Co.*, 2018 WL 5776523, *2 (D. Ariz. Nov. 1, 2018) (quoting *Merrin Jewelry Co. v. St. Paul Fire Marine Ins. Co.*, 49 F.R.D. 54, 57 (S.D.N.Y. 1970)).

Here, Plaintiffs allege that Defendant's coverage counsel acted as a claims adjuster when he "acquir[ed] additional information necessary to make coverage decisions, draft[ed] response letters, and decid[ed] whether to accept or reject tender." (Doc. 129 at 4.) To support this position, Plaintiffs' point to two portions of Mr. Brennan's deposition testimony.[1] Those portions of the deposition follow:

> Q: . . . Is it your understanding that Mr. Barrett or someone in his firm rejected Pulte's tender?
>
> . . .
>
> A: Yes . . ..
>
> . . .
>
> Q: . . . Did the Barrett firm play a role in acquiring [information Defendant needed to decide whether it had a duty to defend]?
>
> A: On certain aspects, yes.
>
> . . .
>
> Q: Can you say whether or not the Barrett firm played a role in obtaining the information that NGM believed it needed?
>
> A: I believe the reservation of rights . . . I think there is a previous letter to this . . . that letter says some additional information we are looking for.

(Doc. 129 at 38–40, Ex. B.)[2] At the Hearing, Plaintiffs also argued claim notes in one of

---

[1] The Court notes that, at the time of supplemental briefing, the official deposition transcript had not yet been made available to the parties by the court reporter. The parties obtained a rough draft for purposes of this dispute. (Doc. 128 at 2.)

[2] Plaintiffs did not separately file their exhibits. The page number corresponds to the page number in Doc. 129, not the page number within the exhibit, itself.

- 3 -

the Underlying Cases support their position.[3] The claim notes provide that "[t]he adjuster has forwarded the necessary documents to coverage counsel for his review and analysis into whether we owe a duty to defend the GC." (Doc. 129 at 68, Ex. C.) Defendant concedes it "received some 'guidance' from counsel" but maintains that "it was still the 'adjuster's responsibility' to investigate and evaluate the claim." (*Id.*)

The Court first notes that there is insufficient evidence to determine whether Defendant's coverage counsel acted as a claims adjuster in *each* of the seventeen Underlying Cases. Plaintiffs have only provided the Court with evidence relevant to the Hill/Alford Matter, MPG2143B-100032, and potentially one other underlying matter.[4] Accordingly, considering the evidence before the Court, the Court finds that Defendant's coverage counsel may have acted as a claims adjuster in the Hill/Alford Matter, MPG2143B-100032. The Court will conduct an *in camera* review of the Hill/Alford, MPG2143B-100032, claim notes to determine whether any communications therein were made by Defendant's counsel for the purpose of securing or giving legal advice.

### B.     Implied Waiver

To the extent the attorney-client privilege applies, Plaintiffs argue Defendant impliedly waived the privilege by asserting "it acted in good faith because it 'conducted an adequate and timely investigation,' while admitting that this investigation and [Defendant's] evaluation of Pulte's claims relied on guidance from counsel." (Doc. 129 at 3.) Defendant contends that "[m]erely obtaining the advice of counsel and incorporating that advice into the decision-making process" is not enough "to conclude there has been a waiver of privilege in 17 different claim files." (Doc. 128 at 5.)

"The attorney-client privilege may be deemed waived when application of the privilege would deny an opposing party access to necessary information to counter a claim

---

[3] Plaintiffs, in their supplemental brief, referred to these claim notes in the context of whether Defendant waived the attorney-client privilege. When asked by the Court what other evidence supports its position, Plaintiffs referred to "letters." But those letters are not currently before the Court.

[4] The deposition transcript provided by Plaintiffs is incomplete. The testimony at 186:8–187:5 does not identify the matter to which Mr. Brennan was testifying. And the Court will not speculate as to which matter that testimony pertains.

or defense asserted by the other party." *Everest Indem. Ins. Co. v. Rea*, 342 P.3d 417, 418 (Ariz. Ct. App. 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1179 (2000)). Defendant, in its Answer, raises the affirmative defense that it "acted in good faith at all relevant times."[5] (Doc. 80 at 16.) This, alone, does not waive the attorney-client privilege. *See Lee*, 13 P.3d at 1181 (explaining the mere assertion of good faith does not impliedly waive the privilege). Rather, the attorney-client privilege "is impliedly waived only when the litigant asserts a claim or defense that is dependent upon the advice or consultation of counsel[.]" *Everest Indem. Ins. Co.*, 342 P.3d at 419. Merely consulting with counsel and taking action based on the advice received is not sufficient to impliedly waive the privilege. *Everest Indem. Ins. Co.*, 342 P.3d at 419. In *Lee*, the Arizona Supreme Court made this point clear:

> We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege. All of this occurred in the present case, and none of it, separately or together, created an implied waiver.

13 P.3d at 1183.

The court then emphasized that the insurer "claim[ed] its actions were the result of its reasonable and good-faith belief that its conduct was permitted by law and its subjective belief based on its claims agents' investigation into and evaluation of the law." *Id.* Both the investigation and evaluation included information and advice received from several lawyers. *Id.* That element—combined with the others—impliedly waived the privilege. *Id.*

Plaintiffs argue that Defendant impliedly waived the attorney-client privilege by implicating its counsel's advice as part of its good faith defense. (Doc. 129 at 3.) Specifically, Plaintiffs contend that Defendant "consulted with counsel to evaluate,

---

[5] The parties agree that Defendant has not asserted an advice-of-counsel defense. (Doc. 129 at 3; Doc. 128 at 4.)

- 5 -

interpret, and learn about the law as it investigated Pulte's claims and decided whether to honor them." But, as the caselaw makes clear, "to waive the privilege, a party must do more than simply confer with counsel and take action incorporating counsel's advice." *Everest Indem. Ins. Co.*, 342 P.3d at 419.

At the Hearing, Plaintiffs argued that Defendant could, at trial, call a claims adjuster to testify about the reasonableness of the investigations into and evaluations of the law in the Underlying Cases. Speculation does not persuade the Court.[6] Plaintiffs also argued at the Hearing, and for the first time in this discovery dispute, that an expert report allegedly suggests that Defendant has asserted a defense that is dependent on the subjective reasonableness of its evaluation of the law. Plaintiffs have not provided the Court with that report. On the present record, the Court finds the "something more" required for an implied waiver under *Lee* and its progeny does not exist. Accordingly, Plaintiff is not entitled to unredacted claim notes on this basis.

### C.   Work Product Doctrine

Plaintiffs contend the work product doctrine does not protect the claim notes for two reasons. (Doc. 129 at 4.) First, Plaintiffs argue the claim notes were created in the ordinary, routine course of adjusting insurance claims, not in anticipation of litigation. (*Id.*) Second, Plaintiffs allege Defendant waived work-product protection by placing its counsel's advice at issue. (*Id.* at 5.)

The work product doctrine protects from discovery documents and tangible things that are prepared by or for a party or its representative in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). "Materials prepared as part of insurance claim investigations 'are generally not considered work product due to the industry's need to investigate claims.'" *Labertew v. Chartis Prop. Cas. Co.*, 2018 WL 1876901, *2 (D. Ariz. April 19, 2018) (quoting *Moe v. Sys. Transport, Inc.*, 270 F.R.D. 613, 624 (D. Mont. 2010)). The nature of the insurer's investigation, however, may shift from an act taken in the ordinary course of

---

[6] Plaintiffs provided the Court with Defendant's Eighth Supplemental Responses to Mandatory Initial Discovery Requests. The Court will not infer from the fact that a Senior Claim Specialist is expected to testify that his testimony will delve into the reasonableness of investigations into and evaluations of the law.

business to an act undertaken in anticipation of litigation when a sufficient degree of adversity arises between the insurer and the insured. *Id.* Thus, materials prepared as part of insurance claim investigations may be deemed eligible for work-product protection if "in light of the nature of the document and factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907 (9th Cir. 2004).

As the party asserting the work product doctrine, Defendant "has the burden of establishing, for each document, the rule's application." *Labertew*, 2018 WL 1876901 at *3. Defendant argues the claim notes were created in anticipation of litigation because "Plaintiffs have been objecting to [Defendant's] handling of these tenders and appointment of separate defense counsel as early as June 2016 and asserted the possibility of litigation over this issue as early as August 2016." (Doc. 128 at 5.) In support of this assertion, Defendant provides the Court with two e-mails sent from Plaintiffs' counsel to Defendant's counsel. (Doc. 128, Ex. 5.) In an e-mail dated June 27, 2016, Plaintiffs' counsel informed Defendant's counsel that "Pulte objects to NGM's attempt to discharge its duty by appointing Righi Fitch as Pulte's counsel." (Doc. 128, Ex. 5 at 5.) The Court finds that, based on the June 2016 e-mail, the "prospect of litigation" has existed since June 27, 2016. At the Hearing, however, Defendant did not know when the claim notes were created. Absent that information, the Court cannot determine whether the claim notes were created in the ordinary course of business or in anticipation of litigation. Accordingly, the Court finds that Defendant has failed to meet its burden of establishing work-product protection for the redacted portions of the claim notes. Because the Court finds that, on the present record, the claim notes are not subject to work-product protection, the Court will not address whether Defendant waived the doctrine's protection.

### III. CONCLUSION

In summary, Plaintiffs seek unredacted claim notes for each of the seventeen Underlying Cases. The Court will review the claim notes in the Hill/Alford matter,

MPG2143B-100032, *in camera* to determine whether those notes are subject to the attorney-client privilege. Although the Court finds, on the present record, that the claim notes in the remaining sixteen cases are not work product, the redacted portions of those claim notes remain protected under the attorney-client privilege.

Accordingly,

**IT IS ORDERED** that Plaintiffs' request for unredacted versions of the claim notes in the seventeen Underlying Cases (part of Doc. 123) is **denied**.

**IT IS FURTHER ORDERED** that Defendant must produce, no later than September 23, 2020, an unredacted version of the claim notes for the Hill/Alford matter, MPG2143B-100032, for the Court to review *in camera*.

Dated this 18th day of September, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge