**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Centex Homes, et al., | No. CV-19-01392-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| NGM Insurance Company, | |
| Defendant. | |

The parties have each filed two motions for partial summary judgment. (Docs. 163, 165, 167, 169.) Each motion is fully briefed. The Court now rules.[1]

## I.   BACKGROUND

This is an insurance coverage dispute arising from 17 underlying construction-defect claims. Plaintiffs Pulte Development Corporation, Pulte Home Corporation, Centex Homes, and Centex Real Estate Construction Company (collectively, "Pulte") are homebuilders. (Doc. 168 ¶ 1.) Pulte participated in the construction of residential developments in Arizona and Nevada by hiring subcontractors to build the homes it ultimately sold. (*Id.*) Those subcontractors included Stucco Systems, LLC, West Coast Air Conditioning, LLC, Cobra Plastering, Inc., and Anozira Stucco & Stone Works, LLC (collectively, the "Subcontractors"). (*Id.* ¶¶ 4–9.) Each subcontract required the Subcontractors to obtain commercial general liability insurance. (Doc. 79 ¶¶ 25, 30, 35,

---

[1] Both parties have submitted legal memoranda, and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

40, 45, 50.) The Subcontractors purchased these policies from Defendant NGM Insurance Company ("NGM"). (Doc. 168 ¶¶ 4–9.) In each policy, Pulte is named as an additional insured. (*Id.* ¶ 3.)

Between June 2014 and June 2018, homeowners asserted seventeen construction-defect claims (the "Underlying Cases") against Pulte.[2] (Doc. 168 ¶ 2; Doc. 180 ¶ 1.) Pulte tendered each of the Underlying Cases to NGM under the above-described policies. (Doc. 168 ¶ 3; Doc. 180 ¶ 2.) NGM ultimately accepted each tender subject to a reservation of rights and attempted to appoint the Righi Fitch Law Firm ("Righi Fitch") to participate in Pulte's defense. (Doc. 168 ¶ 10.) But various periods of time allegedly elapsed between Pulte's initial tender and NGM's acceptance. (Doc. 79 ¶¶ 66, 74, 83, 91, 99, 106, 114, 122, 131, 140, 148, 157, 165, 175, 183, 192.) In Pulte's view, NGM's belated actions breached NGM's duty to defend. (*Id.* ¶ 209.) Pulte further alleges that NGM failed to provide a conflict-free defense. (*Id.*) Thus, Pulte did not allow Righi Fitch to participate in any of the Underlying Cases. (Doc. 168 ¶ 11.) Pulte instead retained independent counsel. (*Id.* ¶ 12.)

Pulte brought this action to recover its defense costs in the Underlying Cases from NGM. Pulte asserts four claims for relief: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) violations of Nevada's Unfair Insurance Practices Act, N.R.S. § 686A.310, and (4) declaratory relief.[3] (Doc. 79.) Both sides have moved for partial summary judgment. (Docs. 163, 167, 165, 169.) The motions are ripe for ruling. (Docs. 175, 177, 179, 185, 190–93.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material

---

[2] The Underlying Cases are referred to in this lawsuit as follows: (1) Arcibal, (2) Arguello, (3) Banaszewski, (4) Bandoni, (5) Banning, (6) Bergmeier, (7) Brown, (8) Chavez, (9) Castanos, (10) Cunningham, (11) Demiris, (12) Hill/Alford, (13) Mendoza, (14) Nesbitt, (15) Anderson/Steedman, (16) Stetson Valley, and (17) Adams. (Doc. 168 ¶ 2.) The pertinent facts of the Underlying Cases will be discussed when assessing the parties' arguments.

[3] Neither party moved for summary judgment on Pulte's breach of the duty of good faith and fair dealing claim or punitive damages. The Court will order supplemental briefing on Pulte's declaratory relief claim.

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (internal citations omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted). A party opposing summary judgment must "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[] that the materials cited do not establish the absence of . . . a genuine dispute." Fed. R. Civ. P. 56(c)(1). This Court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted).

Where, as here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotations omitted). The summary judgment standard operates differently depending on whether the moving party has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). As the party with the burden of proof, a plaintiff "must establish beyond controversy every essential element" of its claims based on the undisputed facts. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotations omitted). A defendant, by contrast, is entitled to summary judgment where it shows that a plaintiff cannot establish one or more elements of a claim considering the undisputed material facts. *Celotex Corp.*, 447 U.S. at 322–23.

## III. DISCUSSION

Sixteen of the Underlying Cases arise from residential developments in Arizona (the "Arizona Cases"), whereas one of the Underlying Cases—the Adams case—stems from a Nevada development. Because the analysis of the factual issues, the law, and the claims

differ between the Arizona Cases and the Adams case, the Court permitted each party to file two motions for partial summary judgment—one to address issues germane to the Arizona Claims and one to address issues arising from the Adams claim. (Doc. 160.) Both parties have since filed two motions for partial summary judgment. (Docs. 163, 165, 167, 169.) Each side has also asserted objections to certain factual assertions in the opposing side's statement of facts. The Court begins by addressing the evidentiary objections.

## A. Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The Ninth Circuit "applies a double standard to the admissibly requirement for evidence at the summary judgment stage." *Quanta Indem. Co. v. Amberwood Dev. Inc.*, No. CV-11-01807, 2014 WL 1246144, at *2 (D. Ariz. Mar. 26, 2014). As to evidence offered by the non-moving party, the focus is on admissibility of the evidence's contents, not its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *see also Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). Evidence offered in support of a motion summary judgment, however, must "be admissible both in form and in content." *Quanta Indem. Co.*, 2014 WL 1246144 at *2.

Authentication is a "condition precedent to admissibility." *Orr*, 285 F.3d at 773. "[E]vidence containing hearsay statements is admissible only if offered in opposition to [a] motion." *Quanta Indem. Co.*, 2014 WL 1246144 at *3. Objections to evidence on the ground that it is not relevant or that it constitutes an improper legal conclusion are "superfluous" at the summary judgment stage because such objections are "duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). The Court's rulings on the parties' respective objections are for purposes of this Order, only.

### 1. NGM's Objections

NGM asserts multiple objections to Pulte's Separate Statement of Facts Supporting

its Motion for Summary Judgment re: NGM's Breach of Duty to Defend and Loss of Right to Select Counsel (Doc. 164) and Separate Statement of Facts Supporting its Motion for Partial Summary Judgment on Adams Case (Doc. 166). The Court will separately address the objections raised as to each statement of facts.

### a.    Pulte's Separate Statement of Facts: Arizona Cases

NGM's objections on grounds that evidence either "ask[s] for legal conclusion" or is irrelevant are duplicative of the summary judgment standard and are neither necessary nor useful. *See Burch*, 433 F. Supp. 2d at 1119. The Court overrules NGM's objections as to foundation concerning Exhibits 3 and 4. *See Orr*, 285 F.3d at 774 ("A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent.")[4] NGM objects to Exhibits 38 and 39 as being untimely disclosed. On this record, the Court cannot say whether Diane Renner or Troy Allen's testimony was timely disclosed. Thus, the Court will overrule the objections without prejudice to NGM raising them at a later date.

### b.    Pulte's Separate Statement of Facts: Adams Claim

NGM's objections on grounds that evidence is irrelevant or constitutes "improper argument" are duplicative of the summary judgment standard and thus neither necessary nor useful. *See Burch*, 433 F. Supp. 2d at 1119. The Court overrules NGM's objections concerning foundation and hearsay as to Exhibits 8, 11, 16, 18, and 21. Those exhibits are communications that Pulte representatives sent to NGM, and the Court finds that the exhibits may potentially be presented in a form that would be admissible at trial. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 803(6); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011). The Court also overrules NGM's objections concerning foundation as to Exhibit 27 because the Preliminary Repair Report's contents could be presented in an admissible form. *See id.* NGM objects to Exhibit 15 as being untimely disclosed. On this

---

[4] To the extent that NGM's objections intend to incorporate by reference the objections it raised during the at-issue depositions, the Court declines to consider the objections at this time. Accordingly, and for purposes of this Order only, the Court will deny the objections without prejudice to NGM raising them at a later date.

record, and as noted, the Court cannot determine whether Diane Renner's testimony was timely disclosed. Therefore, the Court will overrule the objection without prejudice to NGM raising it at a later date.

### 2. Pulte's Objections

Pulte asserts objections to facts included in NGM's Statement of Facts Supporting its Motion for Partial Summary Judgment re: Appointment of Separate Counsel (Docs. 168, 176). Pulte objects to multiple facts on grounds that the evidence is irrelevant. Such objections are duplicative of the summary judgment standard and thus are neither necessary nor useful. *See Burch*, 433 F. Supp. 2d at 1119. The Court overrules Pulte's objection as to foundation concerning Exhibits 2 and 4. *See Orr*, 285 F.3d at 774. To the extent Pulte objects to Exhibit 2 on hearsay grounds, the Court concludes that Exhibit 2's contents may be presented in an admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV16-02277, 2020 WL 1279236, at *17 (C.D. Cal. Jan. 16, 2020).

Under the Local Rules of Civil Procedure, "any objection in [a] party's response to the separate statement of material facts must be stated *summarily without argument*." LRCiv 7.2(m)(2) (emphasis added). NGM argues, and this Court agrees, that several of Pulte's objections violate Local Rule 7.2(m)(2). (Doc. 193 at 2.) For example, in paragraph 14, Pulte includes argument that belongs in its "opposition brief, within the page limit," not in a separate statement of facts. *W. Alliance Bank v. Jefferson*, No. 2:14-CV-0761, 2015 WL 5896236, at *1 (D. Ariz. Oct. 7, 2015). (Doc. 176 ¶ 14.) Therefore, the Court will disregard any arguments articulated in Pulte's controverting statement of facts.[5]

In addition, Pulte asserts additional evidentiary objections in a separate document attached to its responsive memorandum. (Doc. 175–1.) The Local Rules of Civil Procedure require that "objection[s] to (and any argument regarding) the admissibility of evidence

---

[5] Pulte's Controverting Statement of Facts Supporting its Opposition to Defendant's Motion for Partial Summary Judgment on *Adams* Case (Doc. 178) shares similar flaws. Therefore, the Court will also disregard any arguments articulated therein and confine its analysis to the arguments raised in Pulte's Opposition to Defendant's Moton for Partial Summary Judgment re: Adams Claim (Doc. 177).

offered in support of or opposition to a motion must be presented in the objecting party's responsive or reply memorandum." LRCiv 7.2(m)(2). Because Pulte's objections are not presented in the response, itself, the objections violate Local Rule 7.2(m)(2). Thus, the Court finds the objections to be procedurally improper, for purposes of summary judgment only.

### B.    Arizona Cases

Both parties have filed motions for partial summary judgment to address issues specific to the Arizona cases.[6] Because the scope of Pulte's motion is limited to only three of the Arizona Cases whereas NGM's motion relates to all sixteen, the Court will address the motions separately.

### 1.    Pulte's Motion for Partial Summary Judgment (Doc. 163)

Pulte moves the Court to find, as a matter of law, that NGM "breached its duty to defend Pulte in three construction defect cases"—Cunningham, Hill, and Bergmeier—"by failing to provide an immediate defense" and therefore "lost its right to control Pulte's defense." (Doc. 163 at 6.) NGM opposes Pulte's motion on multiple grounds. (Doc. 185.) The Court will first summarize the pertinent facts of Cunningham, Hill, and Bergmeier.

In Cunningham, homeowners served Pulte with a notice of construction defects in October 2015 (the "Cunningham Notice"). (Doc. 164–1 at 75.) The Cunningham Notice included a "preliminary defect list," which listed, among other things, cracked and spalling exterior stucco surfaces. (*E.g.*, *id.* at 80, 81, 84, 85, 94.) Stucco Systems, LLC, the subcontractor who installed the stucco exteriors on some of the Cunningham homes, maintained commercial general liability insurance from NGM.[7] (Doc. 164–1 at 221, 263.) The policy at issue listed Pulte as an additional insured. (Doc. 163 at 7.) In October 2015, Pulte tendered the Cunningham claim to NGM. (Doc. 164–1 at 221.) Pulte provided NGM with additional documents supporting the tender in December 2015. (Doc. 183 ¶ 10.) Three

---

[6] The parties agree that Arizona law applies to this case insofar as the issues arise from the Arizona Cases. *See Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206 (Ariz. 1992).
[7] The policy at issue in Cunningham, Hill, and Bergmeier is policy number MPG2143B, which was in effect from February 1, 2010 through February 1, 2015. (Doc. 164–1 at 263; Doc. 164–2 at 127; Doc. 164–3 at 183.)

months later, NGM denied coverage. (Doc. 164–1 at 263.) Pulte subsequently sent NGM more information regarding the Cunningham claim and twice asked NGM to reconsider its decision denying coverage. (*Id.* at 276; Doc. 183 ¶¶ 14–16.) In April 2017, Pulte informed NGM that the Cunningham homeowners had filed a civil action. (Doc. 164–1 at 274.) In June 2017, NGM agreed to "participate in the defense of [Pulte], through the Righi Fitch Law Group and pursuant to a reservation of rights." (Doc. 164–2 at 9.)

In Hill, homeowners served Pulte with a notice of construction defects in March 2016 (the "Hill Notice"). (*Id.* at 19.) The Hill Notice contained a list of alleged defects, which included cracked exterior stucco surfaces. (*E.g.*, *id.* at 25, 26, 33, 38, 45, 66, 72, 80.) As in Cunningham, Stucco Systems installed the stucco exteriors at some of the Hill homes. (*Id.* at 92.) Thus, the same general liability insurance policy at-issue in Cunningham is implicated in Hill. (Doc. 164–1 at 263; Doc. 164–2 at 127.) In April 2016, Pulte tendered the Hill claim to NGM. (Doc. 164–2 at 91.) In September 2016, NGM denied coverage. (*Id.* at 127.) Six months later, in April 2017, the Hill claimants served Pulte with a civil complaint, which reiterated the defects alleged in the Hill Notice. (*Id.* at 140–41.) In August 2017, NGM's claim handler acknowledged that the civil action had been filed and noted that Pulte's counsel had "specifically argued" that the stucco defects "necessarily result in damage to coatings and paint," which, according to the claim handler, "is the same argument that typically pulls [NGM] into the defense in all of these cases." (*Id.* at 112–13.) The next month, NGM notified Pulte that it would participate in Pulte's defense, through Righi Fitch and subject to a reservation of rights. (*Id.* at 146.)

In Bergmeier, homeowners served Pulte with a notice of construction defects in June 2018 (the "Bergmeier Notice"). (Doc. 164–3 at 7.) The Bergmeier Notice contained a list of alleged defects, including cracked and gapping exterior stucco surfaces. (*E.g.*, *id.* at 15, 22, 29.) Like in Cunningham and Hill, Stucco Systems installed the stucco exteriors at the Bergmeier homes. (*Id.* at 183.) Thus, the general liability insurance policy at-issue in Cunningham and Hill is also implicated in Bergmeier. (*Id.*) On July 3, 2018 and again on July 5, 2018, Pulte tendered the Bergmeier claim to NGM. (*Id.* at 117–18, 125–26.)

Eight months later, NGM agreed to participate in Pulte's defense, through Righi Fitch and pursuant to a reservation of rights. (*Id.* at 183.)

The Court now turns to the parties' arguments. NGM asserts that Pulte is not entitled to summary judgment on multiple grounds. The Court addresses the arguments in turn.

### a. Valid Tenders

NGM argues that Pulte "never actually 'tendered' the defense" in Cunningham, Hill, or Bergmeier. (Doc. 185 at 3.) Thus, according to NGM, Pulte "cannot now claim a breach of [the] duty to defend." (*Id.* at 5.) NGM is correct that an insurer must receive adequate notice that an insured was tendering a defense to it before the duty to defend is triggered. *See Am. Fam. Mut. Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. CV07-2237, 2009 WL 2916817, at *7 (D. Ariz. Sept. 3, 2009) (citing *Purvis v. Hartford Accident & Indem. Co.*, 179 Ariz. 254, 257 (App. 1994)). A tender of defense "must contain full and fair information concerning the pending action and an unequivocal, certain and explicit demand to undertake the defense thereof." *Id.* (quoting *Litton Sys. Inc. v. Shaw's Sales & Serv., Ltd.*, 119 Ariz. 10, 14 (App. 1978)). "What is required is knowledge that the suit is potentially within the policy's coverage coupled with knowledge that the insurer's assistance is desired." *Purvis*, 179 Ariz. at 257 (citations omitted).

In each of the three cases at issue, Pulte submitted letters to NGM that read: "This letter serves as a *tender for the defense and indemnification* and additional insured obligation of Pulte with respect to the enclosed items and projects, and *separate demand for participation* under the Purchaser Dwelling Act, § 12-1361, *et seq.* . . . and in any alternative dispute resolution procedure." (Doc. 164–1 at 221; 164–2 at 91; Doc. 164–3 at 117 (emphasis added).) The top of each letter also states, in bold, underlined font and capital letters, "TENDER OF DEFENSE AND INDEMNIFICATION" and "TENDER OF ADDITIONAL INSURED OBLIGATION." (*Id.*) The Cunningham and Hill letters identify Stucco Systems as the subcontractor who worked on the respective projects and state that the respective homeowners' claims "include allegations that directly impact Stucco Systems's work." (Doc. 164–1 at 222; 164–2 at 92.) In Bergmeier, Pulte

submitted two letters to NGM. (Doc. 164–3 at 117, 125.) The Bergmeier letters identified Anozira Stucco & Stone Works, LLC and Stucco Systems as subcontractors who worked on the Bergmeier project and asserted that the homeowners' claims include allegations that directly impact those subcontractors' work. (*Id.* at 118, 126.)

NGM argues the tenders are invalid because Pulte did not make "an 'unequivocal' demand for NGM to undertake the defense" or "'offer to surrender control' of the defense to NGM." (Doc. 185 at 4.) More specifically, NGM seems to define "unequivocal" as requiring Pulte to affirmatively waive all rights of choosing its own counsel. (*Id.* at 4–5.) The Court disagrees. In each letter, Pulte tendered the claim to NGM and "demand[ed]" that NGM "participat[e]" in its defense. (Doc. 164–1 at 221; 164–2 at 91; Doc. 164–3 at 117.) This language fulfills the requirement that Pulte notify NGM that its "assistance is desired." *See Purvis*, 179 Ariz. at 257. Accordingly, the Court finds that Pulte validly tendered the Cunningham, Hill, and Bergmeier matters to NGM.

### b. Duty to Defend

NGM's second argument is that Pulte has not established that it owed a duty to defend in Cunningham, Bergmeier, or Hill. (Doc. 185 at 7.) An insurer's duty to defend "is separate from and broader than its duty to indemnify." *Teufel v. Am. Fam. Mut. Ins. Co.*, 244 Ariz. 383, 385 (2018). The duty to defend arises when a third-party claimant "alleg[es] facts that, if true, would give rise to coverage." *Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, 261 (App. 2007); *see also INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 150 Ariz. 248, 255 (App. 1986) ("The duty to defend arises at the earliest stages of litigation and generally exists regardless of whether the insured is ultimately found liable."). Subsumed in the duty to defend is a "duty to investigate on the part of the liability insurer." *N. Ins. Co. of N.Y. v. Morgan*, 186 Ariz. 33, 35 (App. 1995).

The "insurance policy language controls the scope and extent of an insurer's duty to defend." *Lennar Corp.*, 214 Ariz. at 260 (quoting *Cal. Cas. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 165, 168 (App. 1996)). The interpretation of an insurance contract is a question of law. *See Wilshire Ins. Co. v. S.A.*, 224 Ariz. 97, 99 (App. 2010). An

insurance policy "must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Charbonneau v. Blue Cross*, 130 Ariz. 160, 163 (App. 1981) (citation omitted). Courts interpret insurance policies according to their plain and ordinary meaning. *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co.,* 225 Ariz. 194, 200 (App. 2010).

In this case, the policy provides that NGM "will have the right and duty to defend the insured against any 'suit'" seeking damages to which the insurance policy applies. (*E.g.*, Doc. 164–2 at 147.) Accordingly, NGM would have a duty to defend Pulte in Cunningham, Bergmeier, or Hill if the homeowners in those cases "alleg[ed] facts that, if true, would give rise to coverage." *See Lennar Corp.*, 214 Ariz. at 261. The policy offers coverage for "those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . to which this insurance applies." (Doc. 164–2 at 147.) The insurance generally applies to "property damage" if it "is caused by an 'occurrence' that takes place in the 'coverage territory' . . . during the policy period." (*Id.*) The policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (*Id.* at 150.) An "occurrence," for purposes of the at-issue policy, "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.*) When interpreting policies like the policy at issue, Arizona courts have held that "mere faulty workmanship, standing alone, cannot constitute an occurrence." *See U.S. Fid. & Guar. Corp. v. Advance Roofing & Supply Co.*, 163 Ariz. 476, 482 (App. 1989).

Pulte's position is that the initial tender letters triggered NGM's duty to defend. (*See* Doc. 163 at 18.) NGM disagrees, arguing that, in each case, there is a reasonable issue as to whether the duty to defend arose and, if so, when. (Doc. 185 at 8.) The Court finds that Pulte has identified sufficient evidence to suggest that the duty to defend plausibly arose in Cunningham, Hill, and Bergmeier. But, as outlined below, multiple questions of fact prevent the Court from identifying the precise time at which such duty was triggered.

In each case, and as noted, Pulte submitted valid tenders to NGM. Although the tenders state that Pulte enclosed, among other things, copies of the respective homeowners' notices of construction defects and preliminary defect lists, (Doc. 164–1 at 222; Doc. 164–2 at 92; 164–3 at 118, 126), NGM disputes whether those documents were actually provided. (Doc. 183 ¶ 31.) Thus, it is unclear from the undisputed facts when NGM received certain details about the underlying claims.

Moreover, in each case, Pulte provided NGM with additional documents, including subcontractor-by-home matrices and copies of the homeowners' notices of construction defects, after tendering its defense to NGM. (Doc. 164 ¶ 9; Doc. 164–6 at 7–8, ¶¶ 3–5.) The notices alleged, among other things, cracked, gapping, and spalling stucco. In the Cunningham and Hill cases, Pulte informed NGM that such defects resulted in, at minimum, damage to the coating and paint applied to cover the stucco. (Doc. 164–1 at 273, 276; Doc. 164–2 at 113.) And NGM acknowledges, in the Hill claim file, that such allegations are what "typically pull[]" NGM into the defense. (Doc. 164–2 at 113.) Only a small inferential step is needed to conclude that cracking stucco will damage the coating or paint applied thereto. Couple that inference with NGM's duty to investigate, and a reasonable juror could find that NGM knew that damages stemmed from the alleged stucco defects, triggering coverage under the subcontractor's policy. But, on the other hand, the factfinder could agree with NGM that it needed more information before it could determine whether the homeowners' alleged more than faulty workmanship. Thus, although the Court finds that duty to defend plausibly arose in Cunningham, Hill, and Bergmeier, multiple questions of fact preclude the Court from determining when such duty was triggered.

### c.  Breach of the Duty to Defend

Turning to Pulte's argument, it contends that NGM breached its duty to defend in Cunningham, Bergmeier, and Hill because NGM failed to provide an immediate defense. (Doc. 163 at 6.) Pulte's argument is straightforward. Pulte calculates the time that elapsed between each initial tender and NGM's decision to participate in Pulte's defense. Based on that calculation, Pulte asserts that "NGM's acknowledgement came *twenty months* after

the Cunningham tender, *seventeen months* after the Hill [t]ender, and *eight months* after the Bergmeier tender."[8] (*Id.* at 18 (emphasis in original).) Pulte then concludes that these delays are unreasonable and constitute a breach of the duty to defend. (*Id.*) But, as explained in detail below, Pulte has not established that NGM breached the duty to defend as a matter of law.

"When interpreting state law, a federal court is bound by the decision of the highest state court." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990). In Arizona, "an unreasonable delay in taking action after receiving notice of a claim *may* constitute a breach of the duty to defend." *Holt v. Utica Mut. Ins. Co.*, 157 Ariz. 477, 483 (1988) (emphasis added). But the trier of fact, not the Court at summary judgment, must generally determine whether such breach has occurred. *Id.* at 482 ("Courts should not grant summary judgment unless all reasonable inferences from the established facts exclude the existence of genuine issues.").

For example, in *Holt v. Utica Mutual Insurance Co.*, an insurer received a copy of a complaint filed against its insured and subsequently took no action for over a year. 157 Ariz. at 483. Notwithstanding that delay, the Arizona Supreme Court declined to find, as a matter of law, that the insurer's conduct breached the duty to defend. *Id.* The court noted that the insurer's inaction may have been, on one hand, "a repudiation of a present duty to protect its client or . . . an anticipatory breach of the future obligation to defend." *Id.* But the Court also explained that the insurer's "laissez-faire attitude might merely reflect corporate ineptitude." *Id.* Given those possibilities, the Arizona Supreme Court refused to "decide as a matter of law whether [the insurer's] conduct could reasonably have been taken as a manifestation that it had no intent to perform under the terms of its liability contract with [its insured]." *Id.* Accordingly, the Court concluded that any "inferences from [the insurer's] behavior must be resolved by the trier of fact trial." *Id.*

Pulte does little to distinguish *Holt* from the present matter. (Doc. 190 at 10.) Pulte

---

[8] In summarizing Pulte's argument, the Court does not suggest that the initial tenders triggered NGM's duty to defend. Whether and when the duty to defend was triggered is a question of fact for the jury.

alleges that "there is no evidence from which to draw any reasonable inferences that might justify NGM's delays." (*Id.* at 11.) But Pulte does nothing more to bolster its assertion. Instead, Pulte suggests that the Arizona Supreme Court's analysis in *Holt* is "incorrect" because the court considered the insurer's motive. (*Id.* at 10–11 n.8.) The Court expresses no opinion on whether Pulte's assessment of *Holt* has merit: this is not the forum to overrule *Holt*. *See Hillery v. Rushen*, 720 F.2d 1132, 1138 n.5 (9th Cir. 1983). Thus, the Court will not entertain Pulte's challenge to *Holt*'s propriety. *See Wilson-Combs v. Cal. Dep't of Consumer Affairs*, No. CIV. 07-2097, 2008 WL 761085, at *1 (E.D. Cal. Mar. 17, 2008) (rejecting an argument that the district court should not follow a case decided by the California Supreme Court because, in the party's view, the case was wrongly decided).

Pulte next urges the Court to apply *Travelers Indemnity Co. of Connecticut v. Centex Homes*, No. 11-CV-03638, 2015 WL 5836947 (N.D. Cal. Oct. 7, 2015). The issue before the court in *Travelers* was "whether an insurer loses its right to control the defense of its insured if it fails to provide the insured with a defense immediately after its duty to defend has been triggered, where the insurer subsequently accepts the insured's tender and offers to provide a defense." (Doc. 163 at 15 (quoting *Travelers Indem. Co. of Conn.*, 2015 WL 5836947 at *1).) Thus, in Pulte's view, *Travelers* is instructive. (*Id.*) In California, an insurer's duty to defend ripens after "a third party files a complaint against the insured . . . and [the] insurer is required to act on the insured's behalf (e.g., when an answer to the complaint is due)." *Travelers Indem. Co. of Conn.*, 2015 WL 5836947 at *4. The district court in *Travelers* applied California law and held "that [an insurer] breached its duty to defend by failing to provide [the insured] with a defense at least 30 days after the complaints [in underlying construction-defect actions] were filed." 2015 WL 5836947 at *5. Thus, because the insurer delayed 13 and 67 days after its duty to defend was triggered, the court found that insurer breached the duty to defend and thereby lost its right to control the insured's defense. *Id.* at *4–5. This Court agrees with Pulte that *Travelers* presents a similar factual scenario as the case at bar. But the Court in *Travelers* applied California law, which is not applicable here. And Pulte cites no authority suggesting that an Arizona

court would apply the bright-line rule in *Travelers*, nor has the Court located as much.

Under Arizona law, an "unreasonable delay in taking action after receiving notice of a claim may constitute a breach" in some circumstances, but in others such delay may be construed as mere "corporate ineptitude."[9] *Holt*, 157 Ariz. at 483. "In either event, the inference to be drawn from an insurer's failure to take action on a claim is left to the trier of fact . . . ." *Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 440 (App. 1997). NGM argues that it "acknowledged the tenders promptly, asked for additional information[,] and performed a coverage review." (Doc. 185 at 7.) NGM further asserts that Pulte contributed to the alleged delays by "'mix[ing] up' the names of the cases and misidentif[ying] the projects." (*Id.* at 8.) The factfinder must determine the inference to be drawn from the parties' allegations. *See Holt*, 157 Ariz. at 483.

### d.    Conclusion

In sum, the Court will deny Pulte's Motion for Summary Judgment re: NGM's Breach of Duty to Defend and Loss of Right to Select Counsel (Doc. 163.) Although the Court finds that Pulte submitted valid tenders to NGM in the Cunningham, Hill, and Bergmeier cases and NGM likely had the duty to defend Pulte in each of those matters, there is a factual issue as to whether NGM's delay breached the duty to defend.

### 2.    NGM's Motion for Partial Summary Judgment (Doc. 167)

NGM moves for partial summary judgment on the issue of whether it had the right to appoint separate counsel to defend Pulte in the underlying Arizona cases. (Doc. 167 at 2.) NGM further argues it is entitled to summary judgment on Pulte's breach of contract claim. (*Id.*) NGM's motion rests on four grounds. First, NGM contends an insurer has a right, under Arizona law, to appoint counsel of its choosing. (*Id.* at 8–13.) Second, NGM asserts that Pulte breached the cooperation clause of the at-issue policies by rejecting NGM's offered defense. (*Id.* at 13–14.) Third, in NGM's view, Pulte failed to submit valid tenders. (*Id.* at 14–15.) Fourth, NGM argues that Pulte did not mitigate its damages. (*Id.*

---

[9] Notably, the Arizona Supreme Court's holding in *Zilich v. State Farm Mut. Auto. Ins. Co.*, 196 Ariz. 234 (2000), further distinguishes the remedies available in Arizona from the remedies available in California.

at 15–16.) The Court will separately address each argument.

### a.    Right to Appoint Separate Counsel

Generally, "when a defense is provided by a liability insurer, 'as part of the insurer's obligation to provide for the insured's defense, the policy grants the insurer the right to control that defense—which includes the power to select the lawyer that will defend the claim.'" *Nucor Corp. v. Emps. Ins. Co. of Wausau*, 975 F. Supp. 2d 1048, 1055 (D. Ariz. 2013) (quoting *Paradigm Ins. Co. v. The Langerman L. Offs., P.A.*, 200 Ariz. 146, 149 (2001)). But, an insurance policy, like all contracts, is governed by the basic principle that, "if one party to a contract breaches the agreement, the other party is no longer obligated to perform." *Holt*, 157 Ariz. at 482. Therefore, if an insurer breaches the duty to defend, an insured "ha[s] the right to fend for himself in resolving the [] lawsuit against him." *Holt*, 157 Ariz. at 482; *see also Manny v. Anderson's Est.*, 117 Ariz. 548, 550 (App. 1977) ("If the insurer breaches its contract by refusing to defend, and the insured then retains counsel and protects himself, the insurer cannot later enter the case without the insured's permission.").

In this case, the at-issue policies provide that NGM "will have the right and duty to defend the insured against any 'suit' seeking" damages to which the insurance policy applies. (Doc. 168 ¶ 10.) NGM argues that it did not lose the right to appoint counsel due to delay or a conflict in interest. (Doc. 167 at 10–13.)

### i.    Delay

The Court has determined that there is a question of fact as to whether NGM breached its duty to defend in Cunningham, Hill, and Bergmeier. *See supra* Part III.B.1.c. Accordingly, the Court cannot determine as a matter of law that NGM retained the right to appoint separate counsel in those three underlying cases. *See Holt*, 157 Ariz. at 483–84.

As to the remaining 13 Arizona cases, NGM asserts that there "has been no showing . . . that NGM clearly and voluntarily waived its right to appoint counsel." (Doc. 167 at 10.) NGM cites *Nucor Corp. v. Employers Insurance Co. of Wausau*, 975 F. Supp. 2d 1048 (D. Ariz. 2013), for support. In that case, the district court considered

whether an insurer waived its right to select independent counsel by failing to do so in a timely manner. *Id.* at 1055–56. NGM cites *Nucor* for the proposition that "[w]aiver of right requires a clear showing of an intent to waive that right." *Id.* at 1056.

In Pulte's view, NGM's argument is irrelevant because "Pulte does not contend that NGM *waived* its purported right to control Pulte's defense." (Doc. 175 at 8 (emphasis in original).) Instead, Pulte articulates its argument as follows: "when an insurer breaches its duty to defend, basic contract principles mandate that its insured be excused from its obligation to cede control of its defense." (*Id.*) The Court finds that Pulte's argument is grounded in caselaw discussing only the breach of the duty to defend, not waiver of the right to appoint counsel. *See Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 153 Ariz. 129, 136–37 (1987). The waiver issue presented in *Nucor* is therefore inapposite.

NGM further argues that Pulte has not produced evidence establishing the alleged delay as to each of the remaining Arizona Cases. (Doc. 193 at 3 n.3.) Though the Court agrees with NGM, the Court underscores the principle that "[a] party seeking summary judgment always bears the initial responsibility of . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Pulte alleges that extended periods of time passed between Pulte's tender and NGM's decision to participate in Pulte's defense in each of the Arizona Cases. (Doc. 79 ¶¶ 66, 74, 83, 91, 99, 106, 114, 122, 131, 140, 148, 157, 165, 175, 183, 192.) And the record allows an inference that those alleged delays did occur. (*See* Doc. 168–1 at 2; Doc. 168–2 at 17.) For example, Pulte's corporate representative, John Macy, testified that NGM "delayed on every one of these cases." (Doc. 168–2 at 17.)

NGM offers no evidence to dispel Pulte's allegations. Instead, NGM only cites an extended excerpt of Mr. Macy's testimony. (Doc. 167 at 11 (citing Doc. 168 ¶¶ 15–16).) Specifically, Mr. Macy testified:

> Q:      . . . [D]o you know whether or not, absent delay, NGM had the right to appoint counsel?

| | | |
|---|---|---|
| A: | We wouldn't have agreed to them appointing counsel. We never do and-- |
| Q: | So it wouldn't have mattered whether [NGM] immediately picked up or not, you would have never agreed to it? |
| A: | No. |
| Q: | Okay. So what does delay have to do with anything, then? |
| A: | It's just as good an argument as any of them. We weren't going to allow it anyway, but even if—even if we would have, [NGM] delayed, delayed on every one of these cases. |

(Doc. 168 ¶ 15.)

Relying on this testimony, NGM contends that Pulte "would not have accepted the defense by Righi regardless of when counsel was appointed" such that "any alleged 'delay' cannot be used to excuse [Pulte's] failure to accept that counsel." (Doc. 167 at 11.) NGM cites no legal authority to support its contention. Pulte argues that "[s]peculation about what Pulte might have done . . . or about its motives for refusing to let NGM pick its lawyer in the Underlying Cases[] is irrelevant." (Doc. 175 at 9.) The Court agrees with Pulte. Speculation is not evidence. The record reflects that varying periods of time elapsed between Pulte's initial tender letter and NGM's answer in each of the Arizona Cases. What Pulte *may* have done had NGM immediately accepted tender does not demonstrate the absence of material fact as to whether NGM's alleged delay in each Arizona Case amounts to a breach of the duty to defend. Thus, the Court cannot conclude, as a matter of law, that NGM retained the right to appoint counsel. *See Holt*, 157 Ariz. at 482.

### ii. Conflict of Interest

Because the factfinder must resolve whether NGM breached its duty to defend due to delay, the Court cannot conclude that NGM retained the right to appoint separate counsel. For completeness, the Court assesses NGM's conflict of interest argument. Pulte

alleges that NGM breached the duty to defend by failing to provide a "conflict-free defense." (Doc. 79 ¶¶ 209, 227.) NGM contends that Pulte has not established a conflict that would prevent Righi Fitch from participating in its defense. (Doc. 167 at 11.) Thus, in NGM's view, NGM did not lose its right to appoint counsel. (*Id.*)

In Arizona, an insurer "relinquishes to the insured control of the litigation" when, as here, an insurer accepts the duty to defend under a reservation of rights. *United Servs. Auto. Ass'n v. Morris*, 154 Ariz. 113, 119 (1987). (Doc. 168 ¶ 10.) "An insured that is notified of its insurer's reservation of rights is on notice and is free, upon proper notice to the insurer, to act to protect its rights in the litigation with the claimant." *Pueblo Santa Fe Townhomes Owners' Ass'n v. Transcon. Ins. Co.*, 218 Ariz. 13, 19 (App. 2008). There is, however, "no support in Arizona case[law] for the blanket proposition that an insurer defending under a reservation of rights loses its right to appoint defense counsel for its insured." *Nucor Corp.*, 975 F. Supp. 2d at 1055. Instead, when a conflict of interest arises between an insured and insurer there are safeguards to protect the insured's interests. *See Paradigm Ins. Co.*, 200 Ariz. at 150.

For example, in *Paradigm Insurance Co.*, the Arizona Supreme Court expressly recognized that "actual conflicts between insured and insurer are quite common and that the potential for conflict is present in every case." *Id.* Such "[c]onflicts may arise over the existence of coverage, the manner in which the case is to be defended, the information to be shared, the desirability of settling at a particular figure or the need to settle at all, and an array of other factors applicable to the circumstances of a particular case." *Id.* "[W]hen a conflict actually arises . . . the lawyer's duty is exclusively owed to the insured and not the insurer." *Id.* "[T]he lawyer must exercise independent professional judgment on behalf of the insured" and "cannot allow an insurer to interfere" therewith. *Id.*

Responding to NGM's motion, Pulte asserts that its position is narrower than what NGM describes. (Doc. 175 at 10 n.5.) According to Pulte, its argument is not that an insurer's reservation of rights *always* prohibits the appointment separate counsel, but instead that an insurer cannot select an insured's lawyer if the insurer "reserv[es] its right

to deny coverage, and the merits of the insurer's coverage defenses may turn on facts litigated in the case." (*Id.* (emphasis omitted).) The Court does not find this distinction meaningful. Pulte's use of the word "may" suggests that only a potential for conflict exists. The potential for conflict between insurer and insured, however, "is present in every case." *Paradigm Ins. Co.*, 200 Ariz. at 150. Therefore, even though Pulte tries to limit its argument, the argument is akin to the blanket proposition that an insurer defending under a reservation of rights loses its right to appoint defense counsel.

Pulte next relies on several cases recognizing that conflicts of interest between an insured and insurer arise in certain circumstances. (Doc. 175 at 11–12 (citing *Pueblo Santa Fe Townhomes Owners' Ass'n*, 218 Ariz. at 19, and *Fulton v. Woodford*, 26 Ariz. App. 17 (App. 1976), and then *Equity Gen. Ins. Co. v. C & A Realty Co.*, 148 Ariz. 515 (App. 1985)).) But notably, none of those Arizona cases hold that an insurer loses its right to appoint counsel when the merits of the insurer's coverage defense may turn on facts litigated in the case.

Pulte's argument also rests on Rule 1.7 of Arizona's Rules of Professional Conduct, which provides that:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

ER 1.7(a), Ariz. Sup. Ct. Rules, Rule 42, Rules of Prof. Conduct. (Doc. 175 at 12.)

Pulte asserts that one of the underlying Arizona Cases, Nesbitt, presents the "concurrent conflict" contemplated in Rule 1.7. (*Id.* at 15.) In Nesbitt, homeowners filed a demand to arbitrate construction defect claims alleged against Pulte. (Doc. 79 ¶ 170.) Pulte

- 20 -

tendered its defense to NGM. (*Id.* ¶ 173.) Several months later, NGM acknowledged its duty to defend under policies issued to Stucco Systems and Cobra Plastering. (*Id.* ¶ 175.) According to Pulte, "a finding in the Nesbitt case that the alleged damage *did not arise* out of NGM's named insured's (Cobra Plastering) work" would relieve NGM of its obligation to indemnify, whereas "Pulte's interests would be best served by a finding that the damage *did arise* out of Cobra's work" because such finding "would preserve coverage for Pulte under NGM policies." (Doc. 175 at 15 (emphasis in original).) Pulte's expert in the Nesbitt matter opined that Cobra's work caused the alleged home damage. (*Id.*) "Cobra's expert, operating under the guidance of Cobra's NGM-appointed counsel, came to the opposite conclusion." (*Id.*)

To start, the Court finds that the fact Cobra's NGM-appointed counsel took a position contrary to Pulte's interest does not necessarily imply that Righi Fitch would have taken the same position when representing Pulte. Cobra's counsel's "primary obligation" was to Cobra, not NGM. *See Paradigm Ins. Co.*, 200 Ariz. at 150. Similarly, had Pulte allowed Righi Fitch to participate in its defense, Righi Fitch's primary obligation would be to Pulte, regardless of whether NGM's interests diverged. *Id.*

Moreover, the Arizona Supreme Court analyzed a lawyer's ethical obligations under Rule 1.7 within the realm of insurance defense in *Paradigm Insurance*. 200 Ariz. at 151. Noting that "the interests of insurer and insured frequently coincide," the Arizona Supreme Court found no reason "why the lawyer [could not] represent both the insurer and insured." *Id.* The Arizona Supreme Court further articulated that "[i]n the unique situation in which the lawyer actually represents two clients, [the lawyer] must give primary allegiance to one (the insured) to whom the other (the insurer) owes a duty of providing not only protection, but of doing so fairly and in good faith." *Id.* (citing *Zilisch*, 196 Ariz. at 237–38). Pulte's argument ignores this distinction, assumes insurer-appointed counsel will disregard their ethical obligations, and overlooks the remedies available if insurer-appointed counsel does unlawfully prioritize the interests of the insurer over the insured.

Pulte's final argument is that Righi Fitch "violated its ethical duties" in an unrelated

case, *Cosgrove v. National Fire & Marine Insurance Co.*, No. 2:14-CV-2229, 2017 WL 11437374 (D. Ariz. Apr. 10, 2017). That case involved an alleged *Parsons* violation.[10] Mr. Righi purportedly "disclosed information that he obtained from [an insured's agent] during the course the attorney-client relationship [to the insurer]" and the insurer, in turn, "rel[ied] on that information to deny coverage." *Cosgrove*, 2017 WL 11437374 at *6. The court concluded that "[s]uch conduct clearly violates the dictates of *Parsons*" because "Mr. Righi owed his full loyalty to [the insured]," not the insurer. *Id.* at *7. Although *Cosgrove* illustrates the harm that may arise if insurer-appointed counsel uses the attorney-client relationship with the insured to gather documents, provides those documents to the insurer, and the insurer relies on such documents to the insured's detriment, such facts are not alleged here. And there is no support in *Cosgrove* for the proposition that an insurer loses its right to appoint counsel when it reserves its right to deny coverage.

Because Pulte has not proffered evidence establishing a genuine dispute as to a conflict of interest, the Court concludes that NGM did not lose its right under the insurance policies to appoint defense counsel due to a conflict of interest.[11] *See Nucor Corp.*, 975 F. Supp. 2d at 1055. There are, however, genuine issues of material fact as to whether NGM breached its duty to defend due to delay. *See supra* Part III.B.2.a.i. Accordingly, the Court cannot determine whether NGM retained its right to appoint separate counsel.

###### b.    Cooperation Clause

NGM argues that Pulte breached the cooperation clause in the at-issue policies, thereby forfeiting its entitlement to the payment of defense costs and right to coverage. (Doc. 167 at 13.) "[A]n insured's breach of policy conditions, including the cooperation clause, might be a defense to an action on the policy." *Holt*, 157 Ariz. at 481. But the Arizona Supreme Court considers the question of "[w]hether an insured has justifiably

---

[10] In *Parsons v. Continental National American Group*, the Arizona Supreme Court held that "[w]hen an attorney who is an insurance company's agent uses the confidential relationship between attorney and [insured] to gather information so as to deny the insured coverage under the policy . . . [,] such conduct constitutes a waiver of any policy defense. . . ." 113 Ariz. 223, 228 (1976).
[11] This holding applies only to the current issue briefed before the Court. If "conflict of interest" evidence is presented at trial on the issue of bad faith, the Court will rule on its admissibility in that context.

contravened the cooperation clause . . . intensely factual," because it hinges both on whether the insurer first breached a duty to the insured and on "the propriety of the insured's consequent prophylactic measures." *Id.* at 484. Considering this, the Court cannot resolve this issue on summary judgment. As noted, there are genuine issues of material fact as to whether NGM breached its duty to defend in Cunningham, Hill, and Bergmeier. *See supra* Part III.B.1.c; *see also Mora v. Phx. Indem. Ins. Co.*, 196 Ariz. 315, 319 (1999) ("Our cases have long recognized that if the insurer breaches a contractual duty to defend or indemnify, the insured is relieved, at least partially, of its duty to cooperate with the insurer."). Similarly, the record is unclear whether NGM's belated response to Pulte's tenders in the remaining Arizona Cases amounts to breach. *See supra* Part III.B.2.a.i. The resolution of these factual questions affects whether Pulte breached the cooperation clause. *See Holt*, 157 Ariz. at 483 ("The resolution of [the possible] inferences regarding [an insurer's] alleged breach of duty affects the question of [an insured's] alleged breach of the cooperation clause."); *see also State Farm Mut. Auto. Ins. Co. v. Peaton*, 168 Ariz. 184, 192 (App. 1990). Therefore, the Court cannot not conclude as a matter of law whether Pulte failed to cooperate.

### c. Valid Tenders

NGM argues that Pulte "never validly tendered the defense of any . . . underlying claims" because Pulte neither made an "unequivocal" demand for NGM to undertake Pulte's defense nor "offer[ed] to surrender control" of such defense. (Doc. 167 at 14–15.) Thus, in NGM's view, Pulte "cannot now claim that NGM breached its duty to defend." (*Id.* at 15.) The Court has already rejected this argument as to the Cunningham, Bergmeier, and Hill claims. *See supra* Part III.B.1.a. NGM has presented no evidence demonstrating that the remaining 13 claims differ in a meaningful way.[12] Pulte's proffered evidence is also limited to Cunningham, Bergmeier, and Hill. (Doc. 175 at 19 (citing Doc. 164 ¶¶ 7, 8, 21, 32, 37, 45, 62).) On this record, the Court cannot determine the validity of the tenders

---

[12] The facts underlying this case are voluminous. The only evidence NGM points to is "SOF ¶ 122." (Doc. 167 at 15.) Such paragraph does not exist. It is not this Court's job to scour the record in search of evidence in support of NGM's position. *See Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994).

- 23 -

1    in the 13 remaining cases.

2              **d.    Mitigation**

3         NGM further asserts that Pulte "failed to mitigate their own damages." (Doc. 167

4    at 15.) Specifically, NGM contends that "other carriers were defending and making

5    payments to [Pulte]" such that Pulte "could have simply reallocated the shares to the other

6    carriers and collected the balance of any unreimbursed defense costs." (*Id.* at 15–16.) Thus,

7    in NGM's view, Pulte failed to mitigate its damages and thereby lost the chance to recover

8    those damages from NGM in this lawsuit. (*Id.* at 16.)

9         In Arizona, "[a] basic principle of the law of damages is that one who claims to have

10   been injured by a breach of contract must use reasonable means to avoid or minimize the

11   damages resulting from the breach." *W. Pinal Fam. Health Cent., Inc. v. McBryde*, 162

12   Ariz. 546, 548 (App. 1989). This principle, however, "affects the measure of damages, not

13   the right to recover." *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 215

14   (App. 1980). At this stage, questions of fact preclude the Court from determining whether

15   Pulte is entitled to damages on its claims arising from the Arizona Cases. Accordingly,

16   NGM's argument is premature.

17        The Court also rejects the argument because it is not supported by Arizona law.

18   NGM offers only two cases to support its position: *Edler v. Edler*, 9 Ariz. App. 140 (App.

19   1969) and *Lennar Corp. v. TransAmerica Insurance Co.*, No. 1 CA-CV-10-0686, 2011 WL

20   5374434 (Ariz. Ct. App. Nov. 8, 2011). (Doc. 167 at 15–16; Doc. 193 at 10–11.) *Lennar*

21   *Corp. v. TransAmerica Insurance Co.* is an unpublished memorandum decision that cannot

22   be cited for persuasive value. *See* Ariz. R. App. P. 28(f); Ariz. Sup. Ct. Rules 111(c)(1)(C)

23   ("Memorandum decisions of Arizona state courts are not precedential and such a decision

24   may be cited only . . . for persuasive value . . . if it was issued on or after January 1,

25   2015 . . . ."). *Edler* stands for the proposition that an insured must "take reasonable steps

26   to mitigate [its] damages." 9 Ariz. App. at 143. The insured in *Edler* "made no effort to

27   defend himself after the [insurance] company denied coverage. He retained no counsel and

28   allowed a $150,000 judgment to be taken against him without protest." *Id.* Had the insured

in *Edler* "employed his own counsel who then sought to protect him," the appellate court would have been "faced with a different picture." *Id.* Here, Pulte retained its own counsel to protect its interests, thus presenting the "different picture" described in *Elder*. NGM has provided the Court with no legal authority supporting its assertion that Pulte forfeited its ability to recover damages because Pulte did not reallocate its defense costs to other insurers. Accordingly, NGM has not established that it is entitled to summary judgment on its argument that Pulte failed to mitigate.

### e. Conclusion

To summarize, the Court will grant NGM's Motion for Partial Summary Judgment re: Appointment of Separate Counsel in part (Doc. 167). NGM is entitled to summary judgment as to Pulte's claims that NGM failed to provide a conflict-free defense. But there are genuine issues of material fact as to whether NGM breached its duty to defend due to delay. Accordingly, the Court cannot conclude that NGM retained the right to appoint separate counsel in the Arizona Cases or satisfied its duty to defend by doing so. Because the resolution of those factual questions affects the question of whether Pulte breached the policies' cooperation clauses, the Court cannot not conclude whether Pulte failed to cooperate. The Court rejects NGM's argument that Pulte failed to properly tender the Cunningham, Bergmeier, and Hill claims and lacks sufficient information to determine whether the tenders in the remaining 13 Arizona cases were valid. The Court also rejects NGM's mitigation argument on the ground that it is premature and on the separate and independent ground that NGM has failed to provide the Court with legal authority supporting its position.

### C. Adams Claim

The Court now turns to the parties' motions for partial summary judgment pertaining to the Adams claim, which arises from a residential development in Nevada.[13] Pulte argues it is entitled to summary judgment on its breach of contract claim and claim

---

[13] The parties agree that Nevada law applies to this case insofar as the issues arise from the Adams claim. *See Cardon*, 173 Ariz. at 206.

alleging violations of Nevada's Unfair Insurance Practices Act.[14] (Doc. 165 at 5.) NGM argues it is entitled to summary judgment on Pulte's breach of contract claim. (Doc. 169 at 2.) The Court begins by summarizing the pertinent facts of the Adams claim.

In October 2015, homeowners in Nevada served Pulte construction-defect notices alleging property damage to their homes. (Doc. 166 ¶ 1–2.) The alleged damage included rust staining due to leaking condensate lines, which purportedly arose from work completed by West Coast Air Conditioning, LLC, doing business as Red Rock Mechanical ("Red Rock"). (Id.) Red Rock maintained general liability insurance issued by NGM. (Id.) In November 2015, Pulte tendered the Adams claim to NGM as an additional insured under Red Rock's policy. (Id.) NGM accepted tender "on a pro-rata or defense-follows-indemnity basis" and pursuant to a "full and complete reservation of rights." (Doc. 170 ¶ 2.)

On June 27, 2017, NGM sent Pulte a letter, indicating that NGM had determined there was no coverage for the claims against Pulte under the Red Rock policy. (Id. ¶ 3.) NGM's position was based on facts derived from "the subcontract, homeowners' matrix, complaints, chapter 40 notices, . . . expert reports, estimated costs of repair report, and other [] documents available to NGM." (Doc. 166–2 at 196.) On July 27, 2017, Pulte issued a letter to NGM, providing that Pulte had "determined that Red Rock Mechanical [was] no longer implicated as of February 21, 2017, the date of [the Adams plaintiff's] cost of repair report, and, as such, has provided a cutoff date for the AI obligation as of that date." (Doc. 170 ¶ 6.) Pulte then demanded that NGM pay $120,687.82 in defense costs incurred through the cut-off date. (Doc. 170–3 at 2.)

In August 2017, Red Rock was dismissed from the Adams litigation, pursuant to a stipulation by Red Rock and the Adams plaintiffs. (Doc. 170 ¶ 7.) The same month, NGM sent a letter to Pulte, indicating it would not contribute more towards Pulte's defense. (Doc. 180 ¶ 25.) NGM reiterated that was defending Pulte on a "defense follows indemnity" basis such that "NGM's duty to contribute towards [Pulte's] defense expenses

---

[14] Plaintiffs refer to themselves as "Centex" in their Motion for Partial Summary Judgment re: NGM's Breach of Duty to Defend *Adams* Case (Doc. 165). For consistency, the Court will continue to refer to Plaintiffs as "Pulte."

follows any indemnity exposure it faces related to Red Rock's work." (Doc. 166–3 at 13.) Therefore, in NGM's view, "if Red Rock's work accounts or 2% of [Pulte's] total liability exposure, [NGM] would pay 2% of [Pulte's] defense expenses." (*Id.*)

In September 2017, Pulte sent NGM a letter attempting to "withdraw[] . . . the AI cut-off date and reinstate[] . . . its tender." (Doc. 170 ¶ 8.) The next month, NGM requested that Pulte advise its third-party billing administrator to "stop sending NGM invoices for [Pulte's] defense expenses" because "NGM is under no obligation to further contribute towards [Pulte's] defense . . . and has notified [Pulte] of its disclaimer of coverage on multiple occasions." (Doc. 170–6 at 3.) Besides NGM, two other additional insured carriers accepted Pulte's tender in the Adams case. (Doc. 170 ¶ 11.) Those carriers have contributed $74,779.96, in total, to Pulte's defense. (*Id.*) NGM contributed $2,000 to Pulte's defense "to demonstrate its good faith participation in [Pulte's] defense." (*Id.* ¶ 20.)

The Court will first address the parties' motions with respect to Pulte's breach of contract claim. An evaluation of Pulte's claims under Nevada's Unfair Insurance Practices Act follows.

### 1. Breach of Contract

Both parties argue they are entitled to summary judgment on Pulte's breach of contract claim regarding the Adams case. The parties agree that NGM owed Pulte a duty to defend in the Adams case. (Doc. 179 at 1.) The parties dispute whether that duty was extinguished by Pulte's July 2017 letter.

"In Nevada, insurance policies [are] treated like other contracts, and thus, legal principles applicable to contracts generally are applicable to insurance policies." *Century Sur. Co. v. Andrew*, 134 Nev. 819, 821 (2018). Insurance policies "create[] two contractual duties between the insurer and the insured: the duty to indemnify and the duty to defend." *Id.* at 822. The duty to defend is "separate from" and "broader than the duty to indemnify." *Id.* "The duty to indemnify provides those insured financial protection against judgments," whereas "the duty to defend protects those insured from the action itself." *Id.* Nevada courts recognize that "[a] duty to defend limited to and coextensive with the duty to indemnify

would be essentially meaningless." *Id.* at 825. And it is "well established" that once the duty to defend arises it "generally applies to the entire action, even though the suit involves both covered and uncovered claims, or a single claim only partially covered by the policy." *Jaynes Corp. v. Am. Safety Indem. Co.*, No. 2:10-CV-00764, 2013 WL 5428095, at *2 (D. Nev. Sept. 26, 2013) (quoting *Presley Homes, Inc. v. Am. States Ins. Co.*, 90 Cal. App. 4th 571, 575 (App. 2001)); *see also Home Sav. Ass'n v. Aetna Cas. & Sur. Co.*, 109 Nev. 558, 565 (1993) ("An insurer obligated by contract to defend an insured owes the insured a continuing duty to defend, and this duty continues throughout the course of the litigation against the insured.").

The Court first considers whether NGM breached the duty to defend, to the extent the parties agree that such duty existed. As noted, NGM concedes it was obligated to defend Pulte until February 21, 2017. (Doc. 179 at 1.) Pulte argues that NGM breached its duty to defend by "accepting only a share of the defense burden . . . [i]nstead of mounting and founding [Pulte's] entire defense." (Doc. 191 at 5.) The Court agrees with Pulte.

In Nevada, an "insurer *must* defend" an insured once the duty to defend is triggered. *Century Sur. Co.*, 134 Nev. at 822 (emphasis in original). "To defend meaningfully, [an insurer] must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile."[15] *Buss v. Superior Court*, 16 Cal. 4th 35, 58 (1997). Where, as here, an insurer "accept[s] only a share of the defense burden," the insurer's act is "equivalent to breach of the duty to defend." *Seagate Tech. LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 737 F. Supp. 2d 1013, 1016 (N.D. Cal. 2010) (quoting *Haskel v. Superior Court*, 33 Cal. App. 4th 963, 976 n.9 (1995) (finding an insurer's "acceptance of a 13 percent share of the defense burden . . . equivalent [to] a defense denial" because when an insurer "owes any defense burden it must be fully borne

---

[15] The parties have not provided, and this Court has not found, Nevada caselaw addressing the precise issue presented here. Because "Nevada's duty to defend appears to be identical to California's, and Nevada courts often look to California for guidance," the Court considers California law. *Zurich Am. Ins. Co. v. Ironshore Specialty Ins. Co.*, 964 F.3d 804, 811 (9th Cir. 2020).

with allocations of that burden among other responsible parties to be determined later.")).

In this case, NGM contributed $2,000 to Pulte's defense despite Pulte making repeated requests for additional payments. (*See, e.g.*, Doc. 166–1 at 260; Doc. 166–2 at 5, 24, 27.) NGM asserts that this "simply" illustrates "a disagreement as to the amount owed," which, according to NGM, does not amount to a breach of the duty to defend. (Doc. 179 at 7.) But NGM fails to cite a single case to support its position. Instead, NGM's position seems to be premised solely on its so-called "defense follows indemnity" model. (*Id.* (citing Doc. 180 ¶¶ 13, 16).) The Nevada Supreme Court has expressly recognized that "[a] duty to defend limited to and coextensive with the duty to indemnify would be essentially meaningless; insureds pay a premium for what is partly litigation insurance designed to protect . . . the insured from the expense of defending suits brought against [it]." *Century Sur. Co.*, 134 Nev. at 825. And courts routinely reject arguments that defense costs should be apportioned based on indemnity. *See Jaynes Corp.*, 2013 WL 5428095 at *2 (finding an insurer's "argument that costs should be apportioned [] unavailing" and noting that although the insurer "may have a claim for equitable contribution from other insurance companies involved, that right cannot be enforced against the insured"). Thus, because NGM has accepted only a share of Pulte's defense burden, the Court finds that NGM breached its duty to defend in the Adams case. *See Haskel*, 33 Cal. App. 4th at 976 n.9.

The Court next considers the categories of damages that Pulte is entitled to recover. "In a case where the duty to defend does in fact arise, and the insurer breaches that duty, the insurer is at least liable for the insured's reasonable costs in mounting a defense in the underlying action." *Century Sur. Co.*, 134 Nev. at 823. NGM argues that Pulte cannot recover unpaid defense fees and costs because it "failed to mitigate those alleged damages." (Doc. 179 at 9.) The Court disagrees. Though an insured "is obligated to take all reasonable means to protect [itself] and mitigate [its] damages," *Century Surety Co.*, 134 Nev. at 826, NGM cites no legal authority supporting the assertion that Pulte must reallocate the fees NGM owes to other carriers. The duty to defend generally "extends to the entire lawsuit." *Jaynes Corp.*, 2013 WL 5428095 at *2. When an insurer contributes more than its fair

share, the insurer "may have a claim for equitable contribution from other insurance companies involved," but "that right cannot be enforced against the insured." *Id.* This is consistent with Nevada courts' disapproval of insurers' attempts "to 'defer or limit [their] liability' on the basis of the availability of other insurance." *See Yosemite Ins. Co. v. State Farm Mut. Auto. Ins.*, 98 Nev. 460, 463 (1982). The Court therefore rejects NGM's argument. Pulte is entitled to recover its "reasonable costs in mounting a defense" in the Adams action.[16] *See Century Sur. Co.*, 134 Nev. at 823.

Pulte is also "entitled to consequential damages resulting from the [NGM's] breach of its contractual duty to defend." *See id.* at 825. An insurer is "liable for all foreseeable damages flowing from the breach" of the duty to defend. *Id.* at 826. "Consequential damages 'should be such as may fairly and reasonably be considered as arising naturally, or were reasonably contemplated by both parties at the time they made the contract.'" *Id.* (quoting *Hornwood v. Smith's Food King No. 1*, 105 Nev. 188, 190 (1989)). Pulte asks the Court to find that it is entitled to recover the attorneys' fees and costs it incurred prosecuting the present action as consequential damages. (Doc. 165 at 20.) But given that an insurer's liability "depends on the unique facts of each case," the factfinder must determine whether the fees and costs actually incurred and not recovered are reasonably foreseeable. *See Century Sur. Co.*, 134 Nev. at 825.

In addition, the amount of damages Pulte is entitled to recover may be limited based on Pulte's July 2017 letter.[17] The July 2017 letter states, in relevant part, that Pulte had "determined that Red Rock Mechanical [was] no longer implicated as of February 21, 2017, the date of [the Adams plaintiff's] cost of repair report, and, as such, has provided a cutoff date for the AI obligation as of that date." (Doc. 166–2 at 207.) In Pulte's view, the letter did not extinguish NGM's duty to defend. (Doc. 191 at 8.) Pulte contends it "never

---

[16] This Order has no bearing on NGM's ability to seek contribution from the two other insurers obligated to defend the Adams claim. *See Presley Homes, Inc.*, 90 Cal. App. at 577.

[17] Because an insurer lacks the authority to unilaterally terminate its defense obligation, NGM's June 2017 letter to Pulte did not discharge NGM's duty to defend Pulte in the Adams case. *See Hartford Accident & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1781 (App. 1994) (rejecting the argument that an insurer could "unilaterally terminate a defense for which it potentially is responsible.").

'agreed' to terminate NGM's defense duty . . . or alter it in any way." (Doc. 177 at 4.) Instead, Pulte asserts it "mistakenly told NGM that [] NGM's AI obligation could be cut-off as of February 21, 2017." (*Id.*) NGM, on the other hand, contends that Pulte "expressly agreed there was no longer a duty to defend and agreed to a cut-off date for any further defense costs." (Doc. 169 at 8.)

From Pulte's letter, one might conclude that Pulte intended to absolve NGM's duty to defend and limit NGM's contribution to Pulte's defense costs. The letter itself, however, is silent as to the duty to defend. (Doc. 166–2 at 207.) Accordingly, one could also infer that Pulte intended the duty to defend to continue until the Adams case was resolved. This inference is plausible given the distinction between the duty to defend and duty to indemnify, *Century Surety Co.*, 134 Nev. at 821–25, and because Nevada and California courts recognize that, when a duty to defend is extinguished, "it is extinguished only prospectively and not retroactively." *Buss*, 16 Cal. 4th at 46; *see also Nautilus Ins. Co. v. Access Med., LLC*, 482 P.3d 683, 691 (Nev. 2021) ("[W]hen the court 'resolves the question of coverage[,] . . . [that] does not . . . retroactively eliminate the insurer's duty to defend its insured during the period of uncertainty." (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Cent., Inc.*, 606 Pa. 584, 611 (2010))). The trier of fact, not the Court, must resolve the inferences to be drawn from Pulte's July 2017 letter.[18]

In sum, the Court finds that NGM owed Pulte a duty to defend and breached that duty by accepting only a share of Pulte's defense burden. Pulte is entitled to recover its "reasonable costs in mounting a defense" in the Adams case and consequential damages, the amount to be determined by the factfinder. *Century Sur. Co.*, 134 Nev. at 823–25. Whether the duty to defend was extinguished by Pulte's July 2017 letter, and if so, whether it was thereafter reinstated by a re-tender are questions of fact for the jury. The jury must

---

[18] If the duty to defend was extinguished by Pulte's July 2017 letter, whether such duty was thereafter reinstated by a re-tender is also a question of fact for the jury. Pulte contends that NGM "ignored evidence making it clear that NGM had an ongoing defense duty." (Doc. 191 at 9.) Pulte presents factual support for its position. (Doc. 191 at 9–12.) NGM contends such facts do not implicate Red Rock's work. (Doc. 179 at 6–7.) If the factfinder concludes that the July 2017 letter disposed of Pulte's duty to defend, the factfinder must also resolve whether the duty was subsequently reinstated.

also determine whether Pulte's July 2017 letter limits or otherwise affects Pulte's damages. NGM has failed to demonstrate that Pulte cannot establish one or more elements of its breach of contract claim. *Celotex Corp.*, 447 U.S. at 322–23. Accordingly, the Court will deny NGM's Motion for Partial Summary Judgment re: Adams Claim (Doc. 169).

## 2. Nevada's Unfair Insurance Practices Act

Nevada's Unfair Insurance Practices Act (the "Act"), N.R.S. § 686A.310, "prohibit[s] insurance companies from engaging in unfair practices when handling insurance claims." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1055 (D. Nev. 2017). "[A]n insurer is liable for damages if it engages in any of [the] various [activities] enumerated" in the Act. *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1126 (D. Nev. 2019). Pulte argues it is entitled to summary judgment under five of the Act's subsections.

### a. Misrepresenting Pertinent Facts or Policy Provisions

The Act deems "misrepresenting to insureds . . . pertinent facts or insurance policy provisions relating to any coverage at issue" to be "an unfair practice." N.R.S. § 686A.310(1)(a). Pulte argues NGM "misrepresent[ed] . . . the scope of NGM's duty to defend [Pulte] under the policy and Nevada law" by "continually assert[ing] that defense follows indemnity." (Doc. 165 at 17.) NGM contends that Pulte has proffered no evidence that NGM misrepresented a fact or policy provision. (Doc. 179 at 10.) NGM further asserts that a difference in legal opinion does not amount to a misrepresentation. (*Id.*) The Court agrees with NGM.

Section 686A.310(1)(a) "prohibits such malfeasance as an insurer misrepresenting the terms of an insurance policy to its insured, or misrepresenting to its insured facts that are within the insurer's knowledge that could give rise to coverage." *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (citing *Albert H. Wohlers & Co. v. Bartgis*, 114 Nev. 1249 (1998), and *Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223 (App. 1991)). For example, in *Albert H. Wohlers*, an insurer violated § 686A.310 by misrepresenting to the insurer that a policy was "comparable" to a previous policy. 114 Nev. at 1266. Pulte has not alleged the NGM misrepresented pertinent facts

relating to the Red Rock policy. Nor does NGM's interpretation of the duty to defend amount to a misrepresentation. *See Zurich Am. Ins. Co.*, 720 F. Supp. 2d at 1237 (holding an insurer's characterizations of an insured's claim "are not misrepresentations of the terms of the [p]olicy or of pertinent facts relating to coverage, but rather constitute [the insurer's] analysis of the Policy and the facts pertinent to [the insured's] claim."). Accordingly, Pulte is not entitled to relief under N.R.S. § 686A.310(1)(a).

Although NGM has not so moved, the Court will grant NGM partial summary judgment on Pulte's claim under § 686A.310(1)(a) because there are no issues of fact remaining as to whether NGM violated that subsection. *See Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494 (9th Cir.2000) ("It is generally recognized that a court has the power sua sponte to grant summary judgment to a non-movant when there has been a motion but no cross-motion.") Pulte has had a full and fair opportunity to brief NGM's liability under § 686A.310(1)(a). *See id.* In fact, Pulte raised the issue in its motion for summary judgment and dedicated adequate attention to the issue in its motion and reply.

### b. Prompt, Fair, and Equitable Settlement

"Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear" is also "an unfair practice" under the Act. N.R.S. § 686A.310(1)(e). In Pulte's view, "it was clear" that "NGM had a duty to defend [Pulte], and that its duty to defend extended to the entire Adams Case." (Doc. 165 at 18.) As noted, whether NGM's duty to defend was extinguished by Pulte's July 2017 letter, and if so, whether it was thereafter reinstated are questions of fact for the jury. *See supra* Part III.C.1. The resolution of those questions affects the question of whether it was "reasonably clear" that NGM's duty to defend extended to the entire Adams Case. Therefore, Pulte is not entitled to summary judgment on its claim under § 686A.310(1)(e).

### c. Compelled Litigation

The Act also deems it an unfair practice to "compel[] insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have

made claims for amounts reasonably similar to the amounts ultimately recovered." N.R.S. § 686A.310(1)(f). Pulte argues NGM required Pulte "to institute this litigation to recover [its] defense costs in the Adams Case that are due to [Pulte] under the Red Rock policy." (Doc. 165 at 18.) Specifically, Pulte asserts that NGM only contributed "$2,000 towards [Pulte's] defense costs and refused to further contribute to [Pulte's] defense, despite numerous demands from [Pulte] for reimbursement." (*Id.*)

Whether NGM is liable under § 686A.310(1)(f) depends on the amount Pulte ultimately recovers in this litigation. Although Pulte is entitled to recover its reasonable defense costs and consequential damages in the Adams case, the amount Pulte is entitled to has not yet been determined by the factfinder. Thus, it is presently unclear whether NGM offered "substantially less" than the amounts Pulte will ultimately recover, and whether Pulte's previous demands are "reasonably similar" to that amount. Thus, summary judgment will not be granted under this subsection. *See Polymer Plastics Corp. v. Hartford Cas. Ins. Co.*, No. 3:05-CV-00143, 2007 WL 9677059, at *10 (D. Nev. Aug. 27, 2007) (declining to grant summary judgment under § 686A.310(1)(f) because "[t]he amount the [insured] [was] entitled to [had] not been established and remain[ed] a matter of dispute").

### d. Influence Settlements

Pulte also argues NGM violated § 686A.310(1)(l), which deems "[f]ailing to settle claims promptly, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage" to be an unfair practice. *See* N.R.S. § 686A.310(1)(l). Specifically, Pulte contends that NGM withheld payment to Pulte for defense costs for four months after NGM acknowledged its duty to defend to "pressure" Pulte into providing a release to NGM's named insured. (Doc. 165 at 18; Doc. 191 at 14.)

To establish liability under § 686A.310(l), an insured "must show that [an insurer's] alleged delay was designed to influence settlements on other claims." *Polymer Plastics Corp.*, 2007 WL 9677059 at *10. The only evidence Pulte provides to support its argument is a letter from an NGM representative to Pulte, dated December 1, 2016. That letter "is a

follow up" to NGM's "offer to pay [Pulte's] expenses pursuant to a defense-follows-indemnity" method because NGM had "no received a subsequent response from [Pulte]." (Doc. 166–2 at 12.) It states that "NGM wishes to resolve this matter amicably" and in a manner "mutually beneficial for all parties involved." (*Id.*) The letter further conveys NGM's "desire to make a one time and final contribution towards [Pulte's] defense expenses." (*Id.*) Pulte offers no evidence suggesting that liability had become "reasonably clear" as of December 2016. To the contrary, the letter reflects the parties' disagreement as to whether NGM was obligated to pay a prorated amount of Pulte's defense costs. Nor does Pulte offer facts suggesting that NGM's four-month delay was designed to pressure Pulte into settlement. Therefore, Pulte is not entitled to relief under § 686A.310(1)(l). The Court will grant NGM partial summary judgment on Pulte's claim under § 686A.310(1)(l) because no issues of fact remain concerning NGM's liability, and Pulte has had a full and fair opportunity to address the issue. *See Kassbaum*, 236 F.3d at 494. (Docs. 165, 191.)

### e. Prompt, Reasonable Explanation for Denial

The Act deems the "[f]ail[ure] to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim" an unfair practice. N.R.S. § 686A.310(1)(n). In Pulte's view, NGM violated the Act because "NGM's position that defense follows indemnity is unreasonable and is not supported by any Nevada authority." (Doc. 165 at 19.) The crux of Pulte's argument is that basis of NGM's position is unreasonable. But an insurer "is not required to have a 'reasonable basis' for its denial; rather, it must give a prompt, reasonable *explanation* of the basis for its denial." *Cordova v. Am. Fam. Mut. Ins. Co.*, No. 2:13-CV-1111, 2015 WL 3660329, at *7 (D. Nev. June 12, 2015), rev'd on other grounds, 700 F. App'x 762 (9th Cir. 2017). Accordingly, Pulte is not entitled to relief under § 686A.310(1)(n). Although NGM has not so moved, the Court will grant NGM partial summary judgment on Pulte's claim under § 686A.310(1)(n) because no issues of fact remain concerning NGM's liability under such provision, and Pulte has had a full and fair

opportunity to brief the issue. *See Kassbaum*, 236 F.3d at 494. (Docs. 165, 191.)

### f. Conclusion

In sum, Pulte is not entitled to summary judgment on its claims under Nevada's Unfair Insurance Practices Act. There are genuine issues of material fact as to whether NGM is liable under § 686A.310(1)(e) and § 686A.310(1)(f) of the Act. NGM is entitled to summary judgment on Pulte's claims under § 686A.310(1)(a), (l), and (n).

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED denying** Pulte's Motion for Partial Summary Judgment re: NGM's Breach of Duty to Defend and Loss of Right to Select Counsel (Doc. 163).

**IT IS FURTHER ORDERED granting in part** NGM's Motion for Partial Summary Judgment re: Appointment of Separate Counsel (Doc. 167). NGM is entitled to summary judgment on Pulte's claim that NGM failed to provide a conflict-free defense. NGM's motion is denied in all other respects.

**IT IS FURTHER ORDERED granting in part** Pulte's Motion for Partial Summary Judgment re: NGM's Breach of Duty to Defend *Adams* Case (Doc. 165). Pulte is entitled to summary judgment on the issue of liability on its breach of contract claim arising from the Adams case, but only to the extent that the parties agree NGM had the duty to defend. Pulte is entitled to recover reasonable defense costs and consequential damages, the amount to be determined by the factfinder. Pulte's motion is denied in all other respects.

**IT IS FURTHER ORDERED denying** NGM's Motion for Partial Summary Judgment re: Adams Claim (Doc. 169).

**IT IS FURTHER ORDERED granting** summary judgment in NGM's favor as to Pulte's claims under N.R.S. § 686A.310(1)(a), (l), and (n).

**IT IS FURTHER ORDERED** that the parties shall file a joint memorandum by no later than **August 12, 2021**, addressing the parties' positions on severing this case for trial. The joint memorandum shall not exceed five (5) pages.

**IT IS FURTHER ORDERED** that by no later than the deadline for the parties to file a final pretrial order, the parties shall file a joint memorandum addressing the parties' positions on how to proceed on Pulte's claim for declaratory relief.[19] The joint memorandum shall not exceed five (5) pages.

**IT IS FINALLY ORDERED** that, by separate order, the Court will set a trial-setting conference in this matter.

Dated this 9th day of July, 2021.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge

---

[19] The parties' deadline to file a final pretrial order will be set in an order following the trial-setting conference.